## R. DAY *vs.* C. T. DAY.

Appeal from Police Court of Honolulu. Before Judd, C.J.

Decision Rendered June 5, 1891. Not hitherto reported.

Under Sections 1125 and 1288 of the Civil Code, a parent is not liable for the negligence of his child, who is a mere infant unemancipated from childish instincts.

### Decision of Chief Justice Judd.

I find the following facts in this case:

Plaintiff and defendant are brothers. The plaintiff lived with his brother, the defendant, paying for his room and board. On the 9th April, 1891, the clothing and personal effects of plaintiff were destroyed by a fire which consumed the house and defendant's effects as well. An infant child of defendant who had arrived at the age of two years the day before the fire, unable to speak intelligently, but capable of somewhat appreciating

when corrected for what she had done that was wrong or forbidden, was known by its parents to have played with matches, striking them off for amusement on previous occasions. The matches in use by both plaintiff and defendant, and others in the house, were the ordinary card matches, easily capable of ignition by friction on any hard substance. Plaintiff was not at home when the fire occurred. Defendant and his sister were sitting on the veranda when defendant's wife came running through the house from the direction of the kitchen, with the infant in her arms, saying "Tweenie," (meaning the infant) "has set Dick's," (meaning the plaintiff) "mosquito net afire." It is conceded that no one saw the child ignite matches in plaintiff's bedroom. The plaintiff's bedroom was not locked during his absence, and a canopy mosquito net hung over the bed reaching to the floor, which, when not in use, was put back of the head board. Plaintiff, who was a smoker, had matches of the same kind above mentioned, accessible to his use on the table and bureau in his room. No other reasonable explanation of the origin of the fire can be given than that the child, when unobserved, went into the plaintiff's room, took some of his matches, and igniting them, being unaware of danger, the net caught fire. This was the cause assigned by defendant when he made application for his insurance. I find no evidence that the child deliberately set the net afire. She had been, however, punished for striking matches and had been forbidden to meddle with them. But there is no evidence that she had ever before this time set any article on fire with a lighted match. Doubtless it amused the child to see the light spring from the end of a match, but as children learn from experience, she had before that time no experience, so far as the evidence goes, in communicating fire from a burning match to other objects.

But it is claimed on the part of the plaintiff that by the statutes of this Kingdom a father is liable for the injury done to another by his child under majority, whether the acts be tortious or not. The statutes are Sections 1125 and 1288 of the Civil Code, as follows:

"§ 1125. All persons residing or being in this Kingdom

shall be personally responsible in damages for trespass or injury, whether direct or consequential, to the person or property of others, or to their wives, children under majority. or wards, by such offending party, or by his wife, or his child under majority, or by his command, or by his animals *domitae* or *ferae naturae*; and the party aggrieved may prosecute therefor in the proper courts."

" § 1288. The children of a valid marriage shall be denominated legitimate, and the husband of said marriage shall be liable for their suitable and proper support in all respects, until they severally attain the age of majority, when his liability shall cease for further provision. He shall also be entitled to control and manage his children, in all respects, during their minority, and require reasonable service at their hands. He shall be the natural guardian of their persons and of their property; he shall be liable in damages for tortuous (*sic*) acts committed by them, and entitled to prosecute and defend all actions at law in which they or their individual property may be concerned."

I find that these provisions of law were taken into the Civil Code from the old statutes of 1846. Section XIV. on page 44 of 2d vol. Statutes of 1846, corresponds with Section 1125 of the Civil Code, and is as follows: " All persons residing or being in this Kingdom shall be personally accountable in damages, to be assessed by or before a court of justice, for trespass or injury, either direct or consequential, to the person or property of others, or to their wives, children under majority, or wards, by such offending party, or by his wife, or child, being under the age of legal majority, or by his command, or by his animal, *domitae* or *ferae naturae*; and the party so aggrieved shall have the right to prosecute therefor in the proper courts by this Act created."

And Section VII. on page 60, 1st Volume Statutes of 1846, corresponds with Section 1288 of the Civil Code, and is as follows: " The children of a valid marriage shall be denominated legitimate, and the husband of said marriage shall be liable for their suitable and proper support in all respects, until

they severally attain the age of twenty years, when his liability shall cease. Said husband shall also be liable to do all the parental duties provided in the third, fourth and fifth parts of this Act. He shall also be entitled to control and manage his children in all respects during their minority, and require reasonable service at their hands. He shall be the natural guardian of their persons and of their property; he shall be liable to prosecution for tortuous (*sic*) acts committed by them, and entitled to prosecute and defend all actions at law in which they or their individual property may be concerned; provided that all minors evincing, to the satisfaction of a court of justice, sufficient understanding to be conscious of right and wrong, shall be, in their persons, liable for crimes committed by them, to the same extent and in the same manner as persons in law."

The Acts of 1846 were drafted by John Ricord, the first Attorney-General of this Kingdom, who had been educated in the Civil or Roman law, and the principles laid down in the two sections above quoted come from the civil law. 1 Pothier Oblig., 121, is as follows: "Not only is the person who has committed the injury, or been guilty of the negligence, obliged to repair the damages which he has occasioned; those who have any person under their authority, such as fathers, mothers, tutors, preceptors, are subject to this obligation, in respect of the acts of those who are under them when committed in their presence, and generally when they could prevent such acts, and have not done so; but if they could not prevent it then they are not liable, *nullum crimen patitur is, qui non prohibet, quum prohibere non potest,* 1. 109 *ff de reg. jur.;* even when the act is committed in their sight and with their knowledge, *culpa curet qui scit sed prohibere non potest,* 1. 20 *ff. d.* 1."

Civil Code of Louisiana, Section 2297: "The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons. The same responsibility attaches to the tutors and curators of minors."

I am unable to find anything in the common law which

makes a parent liable for the injuries or torts of his child. All the text writers say that "an infant is responsible for his torts as any other person would be." Cooley, Torts, p. 103; 1 Addison, Torts, p. 121; 5 Waite's Actions and Defences, 54; Schouler's Dom. Rel., pp. 361 and 362; *Barnard vs. Haggis,* 14 C. B., 45; *Campbell vs. Stakes,* 2 Wend., 620; *Sikes vs. Johnson,* 6 Mass., 389; 23 Conn., 437.

The doctrine requires the modification that the infant must, where malice is an ingredient, have arrived at years of discretion, or, as some express it, be "emancipated from childish instincts." This is essential when the tort springs from negligence.

"A father is not responsible for the tortious act of his child when done in his absence and without his authority or approval." *Tift vs. Tift,* 4 Denio, 175; *Burnham vs. Holt,* 14 N. H., 367.

In *Scott vs. Watson,* 46 Me., 362, it was held that an action of trespass may be maintained against an infant, although he did the act by command of his father. Cases exist where a father has been held liable for the act of his son as his servant when the father is present and directs the act. Where the tortious act is done by force, all authorities agree that the age of the infant is unimportant. *Baxter vs. Bush,* 29 Vt., 465; *Scott vs. Watson,* 46 Me., 362.

It is clear from the above authorities that in Great Britain and the United States, where the common law prevails, the present action could not be maintained. And we have in this Kingdom created by a statute, to which public attention has not been drawn, the responsibility of a father in damages for the "trespass, injury and tortious acts of his infant child," which is totally at variance with the principles of the common law. And the responsibility is broad and unqualified, without the limitation common in the countries where the civil law prevails, to such acts of the infant as are committed in the presence of the parent and when he could have prevented their commission.

I have no hesitation in saying that this principle is inconsistent with the general principles of the common law and the

system of jurisprudence which exists here. But it is the law of the land and must be enforced. The two sections must be read together, as all laws in *pari materia* should be, Civil Code, Section 11. And the true meaning to be derived from them is that the father is responsible in damages for the tortious acts of his child under majority, for the words "trespass and injury" in Section 1125, for which the father is responsible, imply wrong doing or a tort, which is made clear by Section 1288, making a father responsible for the tortious acts committed by his children under majority.

By the Penal Code, Chap. IV., Sec. 1, an infant under seven years of age is incompetent to commit an offense. He is not *doli capax*. By Section 2: " Between the ages of seven and fourteen years, competency to commit any alleged offense, and the fact that the accused acted with intelligence and understanding of the nature of the act, shall be determined by the evidence of the case, without any general presumption for or against the same." The child in the present case was just two years old. If a child of such tender years is not to be deemed capable of committing any penal offense, it is difficult to see how it could at that age commit a tortious act. But if the limit of responsibility for penal offenses is not to be applied to tortious acts for which damages can be claimed, I think the reasoning is sound that requires that the same rule should be applied to the responsibility of a father for the tortious acts of his child as applies to the same acts of the infant in those jurisdictions where the infant is itself responsible. At the tender age at which the child in the case before me was—a mere baby—not emancipated from childish instincts—it would be monstrous to hold it capable of committing a tort. Judge Cooley (p. 104, on Torts) says: "The absurdity of a suit against a child three years old would be sufficiently manifest." A child of two years cannot be held morally responsible for the consequences of intentional action, and if not morally, then not legally responsible, and it follows that the statute does not make the father responsible for such an act, for it lacks the element of wrong and should be

treated as an "unavoidable accident." For the above reasons I find in favor of the defendant.

*C. L. Carter*, for plaintiff.

*W. O. Smith*, for defendant.