529 F.Supp. 394 (1982)
Michael G. BRYAN, et al., Plaintiffs,
v.
Teruo KITAMURA, etc., et al., Defendants.
Civ. No. 80-0217.
United States District Court, D. Hawaii.
January 5, 1982.
*395 Steven J. Trecker and Collin M. Fritz, Kailua, Hawaii, for plaintiffs.
Richard E. Stifel, Honolulu, Hawaii, for Teruo Kitamura and Miyako Kitamura.
James Kawashima, J. Douglas Ing, Honolulu, Hawaii, for Edward Sasaki.
Ronald T. Y. Moon, Honolulu, Hawaii, for Doris I. Sasaki.
William L. Fleming, Roy A. Vitousek, III, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for Hiroo and Lillian Hayashi.
George W. Brandt, Thomas E. Cook, Lyons, Hagerman & Brandt, Honolulu, Hawaii, for Myles Tamanaha, Dayne Tamanaha, and Harriet Tamanaha.
Mamoru Shimokusu, Kushi, Shimokusu & Kushi, Hilo, Hawaii, for Carol Shimaoka and as guardian for Keith Tokuda.

DENIAL OF MOTIONS TO DISMISS AND MOTIONS FOR PARTIAL SUMMARY JUDGMENT
PENCE, District Judge.

I. INTRODUCTION
On the night of July 13, 1979, a group of juveniles allegedly stole a 1978 Ford van in Hilo and drove approximately 35 miles to Pohakuloa Training Area, where they attempted to steal guns and ammunition from a military ammunition depot. During the attempted theft, the juveniles shot and injured the plaintiffs, who were military personnel standing guard at the ammunition depot. At the time of the incident, the juveniles involved were between 14 and 16 years of age.
Plaintiffs brought this suit against both the juveniles and their parents. Plaintiffs assert that the parents are liable under section 577-3 of the Hawaii Revised Statutes (HRS), which provides that parents are jointly and severally liable for the tortious acts of their unmarried minor children.
Defendants challenge the constitutionality of this statute by way of motions to dismiss and motions for partial summary judgment. Defendants claim that the statute unconstitutionally burdens the family by imposing liability on parents without fault in a manner that violates the due process and equal protection clauses of the 14th amendment of the United States Constitution.

*396 II. HAWAII'S PARENTAL LIABILITY STATUTE
Hawaii's parental liability statute finds its origin in the Acts of 1846 which were drafted by John Ricord, the first Attorney General of the Kingdom of Hawaii.[1] The provision became codified as section 1288 of the Civil Code, and provided that the father "shall be the natural guardian of their [children's] persons and of their property; he shall be liable in damages for the tortious acts committed by them ...."[2]
In 1931, the provisions of the Civil Code relating to parental responsibilities were revised to make both the mother and the father responsible for the acts of their children.[3]
Hawaii's parental liability statute, HRS section 577-3,[4] reads, in relevant part, as follows:
The father and mother of unmarried minor children shall jointly and severally be liable in damages for tortious acts committed by their children, and shall be jointly and severally entitled to prosecute and defend all actions in which the children or their individual property may be concerned.
Although this section also provides that the guardianship of an unmarried minor may, under certain circumstances, devolve upon one parent, the parental liability portion of the statute specifically imposes liability on both the mother and father, without reference to custody, and does not apply to guardians who are not the mother or the father of the child.
Hawaii's parental liability statute has not been extensively interpreted by the Hawaii Supreme Court. In Day v. Day, 8 Haw. 715 (1891), that court held that the statute could not be interpreted to impose liability on a parent when the child, because of his young age, was not himself legally responsible for his torts.
In Victoria v. Palama, 15 Haw. 127 (1903), defendant's seven-year-old son accidentally shot another minor with a shotgun, destroying the vision of one eye. The Supreme Court upheld a directed verdict against the father stating that "the father can be held responsible in damages for the torts of his infant in every case where the infant itself would be liable at the common law." 15 Haw. at 129.
Finally, in Rathburn v. Kaio, 23 Haw. 541 (1916), the court held that the statute could not be used to impose liability on parents for acts which the court found to be an alleged breach of contract and not tortious in nature.
It does not appear that the Supreme Court of Hawaii has ever heard a challenge to the constitutionality of section 577-3.[5]

*397 III. THE PISCATAWAY CASE
In Piscataway Township Bd. of Ed. v. Caffiero, 86 N.J. 308, 431 A.2d 799 (1981), appeal dismissed for want of a sub. fed. ques., ___ U.S. ___, 102 S.Ct. 560, 70 L.Ed.2d 470 (1981), the Board of Education brought suit against the parents of minors who had allegedly damaged school property. The basis for the action was a New Jersey statute which subjects the parents or guardians of minor public school children to liability for damage to school property caused by their children.[6] A New Jersey Superior Court held that the statute violated the 14th Amendment of the United States Constitution, but the appellate division reversed, holding that the statute violated neither the due process nor the equal protection clauses of the 14th Amendment. Piscataway Township Bd. of Ed. v. Caffiero, 173 N.J.Super. 204, 413 A.2d 981 (1980). The Supreme Court of New Jersey affirmed the appellate division and the parents filed an appeal to the United States Supreme Court.
On November 9, 1981, the Supreme Court dismissed the appeal for want of a substantial federal question. Caffiero v. Piscataway Township Bd. of Ed., ___ U.S. ___, 102 S.Ct. 560, 70 L.Ed.2d 470 (1981). This disposition is the equivalent to an affirmance on the merits. Hicks v. Miranda, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975); McCarthy v. Philadelphia Civil Serv. Comm'n., 424 U.S. 645, 646, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976). This court is therefore bound by the result in Piscataway to the extent that the two cases may involve the same legal issues. Hicks, supra, 422 U.S. at 343-44, 95 S.Ct. at 2288-89; McCarthy, supra, 424 U.S. at 646, 96 S.Ct. at 1154.
Defendants claim that this case is distinguishable from Piscataway because the Hawaii parental liability statute is much broader than the New Jersey statute which applied only to the parents and guardians of public school children who damage school property. Defendants also argue that HRS 577-3 contains constitutional obligations not found in the New Jersey statute.[7]
Defendants' argument has merit. Although dismissal of an appeal is binding on subsequent cases involving similar facts,[8] such a dismissal does not necessarily adopt the opinion or reasoning of the court below.[9] Although the reasoning of the New Jersey Supreme Court in Piscataway is broad enough to control many of the issues involved here, this court finds that the Hawaii statute differs significantly from the New Jersey statute upheld in Piscataway and therefore requires detailed consideration of its alleged constitutional defects.

*398 IV. SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION
Defendants' principal contention is that the Hawaii statute is violative of the due process and the equal protection clauses of the 14th Amendment because it unreasonably interferes with a right that is "fundamental", in this case the right of parents to raise a family without the state's imposing unreasonable financial burdens upon them. Although the due process and equal protection clauses of the 14th Amendment have in many instances been interpreted differently by the Supreme Court, both have been used similarly to protect fundamental substantive rights.[10]
Under both substantive due process and fundamental rights equal protection analysis, a court must first identify a right that is affected by the challenged state action.[11] Under equal protection analysis, if a statute interferes with the exercise of a fundamental right, it cannot be upheld unless it is "supported by sufficiently important state interests and is closely tailored to only those interests."[12] If a fundamental right is not affected, it suffices that the statute have a rational relation to a legitimate government purpose.[13]
Defendants argue that the Hawaii parental liability statute affects fundamental rights associated with the family. They base their argument on a series of Supreme Court decisions that recognize the importance of personal decisions affecting the family. These cases have held that some personal choices affecting the family are so important that they must be deemed fundamental rights for the purposes of constitutional analysis. For example, the Court has held that freedom of choice in marriage,[14] child bearing,[15] and child rearing,[16] are within this category.
Defendants attempt to bring the Hawaii parental liability statute within the scope of these decisions by arguing that it discourages persons from having children and interferes with the raising of children by placing a severe economic burden on the parents. This court rejects defendants' conclusions.
Those rights found to be fundamental by the Court share the characteristic of involving freedom of choice. For example, in *399 Zablocki v. Redhail, supra, the Court found unconstitutional a statute which interfered with a person's decision to marry by requiring an individual with child support obligations to seek court approval before marrying.[17] Similarly, in the abortion and birth control cases, the Court expressed concern over regulation which interfered with a person's right to decide whether or not to have children.[18]
The Hawaii statute places no real burden on either the decision to have a child or decisions concerning childrearing. This court could not reasonably conclude that the threat of potential tort liability plays any role in the decision of parents whether or not to have children. Likewise, the Hawaii statute does not prevent parents from making decisions concerning their children. In fact, it promotes the making of such decisions by providing parents with an incentive to play a greater role in the supervision of their children.[19]
The only interest with which the statute may interfere is the parents' interest in raising a family without any economic limitations imposed by the state. This interest, however, is not one that rises to the level of a fundamental right. Unlike other interests held to be fundamental, it is not one that includes personal choice. This court finds the case at bar similar to Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1969), where the Court found that a ceiling on welfare payments to large families did not affect a fundamental interest and accordingly applied the rational basis test in upholding the challenged regulations.[20] This court similarly finds that the defendants here have not shown that the Hawaii parental liability statute affects a right that is fundamental. Although some families may undergo financial strain as a result of the statute, this fact alone does not establish encroachment on a fundamental interest. Therefore, this court must give effect to HRS section 577-3 if it can be shown to have a rational basis.
HRS section 577-3 clearly has a rational relation to legitimate government interests. One justification for the statute is that it provides a remedy for tort victims who would otherwise receive no compensation *400 for their injuries.[21] Imposition of vicarious liability without fault is normally justified by the policy decision that the person held liable is in a position to shift the costs of an injury to the public at large through the purchase of liability insurance.[22] This rationale certainly holds true in the case of the Hawaii parental liability statute. A minor is, in almost all cases, judgment proof and without personally acquired insurance. If fault is not imputed to the parent, the child's victim must bear the entire cost of the injury suffered. The child's parents, however, are in a position to spread the cost of the injury to the public at large through the purchase of liability insurance.[23]
Another possible justification for the statute is that it deters juvenile delinquency by providing an incentive to parents to exercise greater supervision over the activities of their children. Defendants argue that the statute is not tailored to meet this goal because the statute imposes liability even where parents have exercised due care in supervising their children. The legislature, however, may have wished to impose an even greater duty on parents to affirmatively prevent tortious acts by their children. In any event, this court need not find that the statute is the best method for deterring juvenile delinquency, or that it deters juvenile delinquency at all, but only that it has a rational basis. This court cannot say that HRS section 577-3 is without a rational relation to a legitimate government purpose.

V. PROCEDURAL DUE PROCESS
Defendants claim that HRS section 577-3 violates the due process clause of the 14th Amendment because it creates an "irrebuttable presumption" that natural parents are responsible for the torts of their children, regardless of their due care or lack of custody over the children. The Court has held some legislative schemes unconstitutional because they denied important benefits on the basis of status through the use of "irrebuttable presumptions".[24] These decisions, however, have come under considerable attack and the continuing validity of the "irrebuttable presumption" doctrine is much in doubt.[25] Commentators have argued that the prohibition on irrebuttable presumptions is no more than equal protection analysis in disguise since the objectionable portion of each statute is the manner in which it classifies individuals.[26] This view is supported by the fact that irrebuttable presumptions have been upheld by the Court where the presumption did not involve a suspect classification and did not affect the exercise of a fundamental right.[27]
*401 This court finds that HRS section 577-3 does not contain an unconstitutional "irrebuttable presumption". Parents are not automatically liable under the statute for all damages caused by their children. They have the opportunity at trial to present any defenses available to their children. The parents are only precluded from using the defense that they themselves are without fault.[28]
This court has already held that imposition of liability without fault does not threaten the exercise of a fundamental right. The statute might be defective if it operated by means of an invidious classification, but for all intents and purposes, this presents an equal protection and not a due process claim. The only "process" which could alter the alleged irrebuttable presumption is an abolishment of the classification scheme adopted by the statute. This court addresses this problem under the more appropriate rubric of the Equal Protection Clause.

VI. EQUAL PROTECTION
Defendants allege that HRS section 577-3 violates the Equal Protection Clause because it discriminates against natural parents. Unless a statutory classification infringes on fundamental personal rights or is made on the basis of an inherently suspect distinction such as race, religion, or alienage, it is valid so long as it is rationally related to a legitimate state interest.[29] This court has already held that HRS section 577-3 does not affect the exercise of a fundamental personal right. Neither does it involve a suspect classification. A suspect class is one that is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."[30] Natural parents are certainly not such a group. HRS section 577-3 is therefore valid so long as its singling out of natural parents is rationally related to a legitimate state interest.
*402 Defendants argue that HRS section 577-3 is defective because it fails to impose liability on those other than natural parents who are equally responsible for a child's conduct. The statute's inclusion of only the mother and the father does not render it unconstitutional. It is within the discretion of the legislature to address only part of a problem or to select only one phase of a field for regulation.[31] The legislature's refusal to extend the statute to appointed guardians is not without logic. The legislature may have wished to encourage persons to take on appointed guardianships by relieving them of an added financial burden of parenthood, or it may have decided that it would be unfair to make a newly appointed guardian liable for the torts of an already incorrigible child. In any event, this court cannot say that the distinction drawn by the statute between parents and others responsible for a child's behavior is not rationally related to a legitimate government purpose.
Defendants also argue that HRS section 577-3 is overinclusive because it can be interpreted to apply to natural parents who have never had custody over their offspring.[32] Defendants maintain that this possibility renders the statute invalid on its face. This court declines to adopt such a position.
Ordinarily, a person to whom a statute may constitutionally be applied cannot challenge that statute on the grounds that it might conceivably be applied unconstitutionally to others.[33] An exception to this rule is sometimes found where First Amendment freedoms are at stake.[34] Even in the First Amendment area, however, the doctrine of facial overbreadth is not invoked where a limiting construction can be placed on the challenged statute.[35]
This court finds that the application of HRS section 577-3 could easily be interpreted and narrowed to require a nexus between natural parentage and a significant period of custody of control of the child.[36] In this case, this court need not address the statute's exact constitutional scope. All but one of the defendants in this case have custody of their children. The other parent, Doris Sasake, had custody of her son until eight months prior to the incident at Pohakuloa. On the facts before it, this court cannot say that application of the statute to any of the defendants would be unconstitutional.[37] This court therefore declines to reach the question of whether the statute might be unconstitutional as applied under some other factual circumstances.
For the reasons above set forth: Defendants' Motions to Dismiss and Motions for Partial Summary Judgment are HEREBY DENIED.
NOTES
[1] Statutes of 1846, Vol. 1, p. 60; see, Day v. Day, 8 Haw. 715, 717-18 (1891).
[2] Compiled Laws of the Hawaiian Kingdom § 1288 (1884).
[3] The original version of the 1931 Senate Bill apparently omitted reference to the liability of parents for the torts of their children. The Judiciary Committee of the House of Representatives, however, added by amendment the language currently found in the statute imposing liability on the parents for the tortious conduct of their children. Journal of the House of Representatives of the 16th Legislature of the Territory of Hawaii, Reg. Sess., 879-80 (1931). The Senate subsequently agreed to this amendment. Journal of the Senate of the 16th Legislature of the Territory of Hawaii, Reg. Sess., 791-92 (1931).

This evidence tends to dispel the inference drawn by the defendants that the adoption and retention of the parental liability statute in the Hawaii Revised Statutes was somehow a legislative oversight.
[4] Defendants point out that HRS section 663-1 also imposes liability on parents for the torts of their children by stating that all persons in the state are responsible for any damages "to person or property of others" caused "by such offending party, or his child under majority ...." Since section 663-1 essentially duplicates the language of section 577-3, with less specificity, this court's analysis of section 577-3 is equally applicable to any liability imposed by 663-1.
[5] The constitutionality of section 577-3 has been challenged on at least two occasions on the trial level of the state courts. In both instances, the constitutionality of the statute has been upheld. See, Apilando v. Alexander, et al., Civil No. 56718 (1981); Kansaki, et al. v. Kiyota, et al., Civil No. 49289 (1977).

A number of cases in other jurisdictions have upheld similar statutes. See, e.g., Watson v. Gradzik, 34 Conn.Super. 7, 373 A.2d 191 (1977); General Insurance Co. of America v. Faulkner, 259 N.C. 317, 130 S.E.2d 645 (1963); In re Sorrell, 20 Md.App. 179, 315 A.2d 110 (1974); Kelly v. Williams, 346 S.W.2d 434 (Tex. 1961); Vanthournout v. Burge, 69 Ill.App.3d 193, 25 Ill.Dec. 685, 387 N.E.2d 341 (1979); Rudnay v. Courbett, 53 Ohio App.2d 311, 374 N.E.2d 171 (1977); Mahaney v. Hunter Enterprizes, Inc., 426 P.2d 442 (Wyo.1967); but see, Corley v. Lewless, 227 Ga. 745, 182 So.2d 766 (1971).
[6] New Jersey Statutes Annotated section 18A:37-3 provides that:

The parents or guardians of any pupil who shall injure any school property shall be liable for damages for the amount of the injury to be collected by the board of education of the district in any court of competent jurisdiction, together with costs of suit.
[7] For example, defendants claim that HRS 577-3 is defective because it imposes liability on natural guardians, regardless of custody, and does not impose liability on appointed guardians. The New Jersey statute applies to both parents and guardians and was interpreted by the Supreme Court of New Jersey to apply only to parents with custody of their children. See, Piscataway, supra, 431 A.2d at 803.
[8] See, McCarthy, supra, 424 U.S. at 646, 96 S.Ct. at 1154; Meek v. Pittenger, 421 U.S. 349, 366 n.16, 95 S.Ct. 1753, 1764 n.16, 44 L.Ed.2d 217 (1975).
[9] Illinois Elections Bd. of Socialist Workers Party, 440 U.S. 173, 182-83, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979); Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977).
[10] See, e.g., Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (statute which limits occupancy of dwelling unit to immediate family violates due process clause); Cleveland Bd. of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (mandatory maternity leave statute violative of due process clause); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (restrictions on right to travel violative of equal protection clause); Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (conditioning right to marry on fulfillment of child support obligations violative of equal protection clause. Concurring opinion of Stewart, J. would invalidate on due process grounds.)
[11] See, e.g., Moore, supra, 431 U.S. at 499, 97 S.Ct. at 1935 (right to choose family living relationships); Zablocki, supra, 434 U.S. at 383, 98 S.Ct. at 679 (right to marry).
[12] Zablocki, supra, 434 U.S. at 383, 98 S.Ct. at 679; see also, Shapiro, supra, 394 U.S. at 634, 89 S.Ct. at 1331. Standards enunciated in due process cases are less exacting but nonetheless require the court to carefully balance the interests of the state against the intrusion on individual rights. See, e.g. Moore, supra, 431 U.S. at 499, 97 S.Ct. at 1935 (the court must "examine carefully the importance of the governmental interests and the extent to which they are served by the challenged regulation); see, generally, Developments in the Law, The Constitution and the Family, 93 Harv.L.Rev. 1157, 1193-98 (1980).
[13] United States v. Kras, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1969).
[14] Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Zablocki, supra.
[15] Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).
[16] Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).
[17] The Court made clear in Zablocki that it was the decision to enter into a marital relationship that was a fundamental personal right and not the institution of marriage itself. The Court noted that

By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to strict scrutiny. To the contrary, reasonable regulations that do not significantly interfere with the marital relationship may legitimately be imposed. 434 U.S. at 386, 98 S.Ct. at 681.
The Court further indicated, in a footnote, that a regulation did not interfere with the marital relationship unless it could reasonably be found to interfere with the actual decision to marry. In distinguishing the case of Califano v. Jobst, 434 U.S. 37, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977), in which the Supreme Court had upheld the termination of a dependent child's Social Security benefits upon marriage of the child's parent to an individual not entitled to benefits under the Social Security Act, the Court stated that
The Social Security provisions placed no direct legal obstacle in the path of persons desiring to get married, and ... there was no evidence that the laws significantly discouraged, let alone made "practically impossible", any marriages. 434 U.S. at 387 n.12, 98 S.Ct. at 681 n.12.
[18] See, e.g., Roe v. Wade, 410 U.S. 113, 153-54, 93 S.Ct. 705, 725-26, 35 L.Ed.2d 147; Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972); Carey v. Population Services International, 431 U.S. 678, 684-86, 97 S.Ct. 2010, 2015-16, 52 L.Ed.2d 675.
[19] Cases recognizing childrearing decisions as fundamental have occurred in the context of regulations which denied the right of parents to make decisions concerning their children. See, e.g., Pierce v. Society of Sisters, supra (requirement that all children attend public schools); Meyer v. Nebraska, supra (prohibition on instruction of children in foreign languages). It does not appear that any court has held that the state may not require parents to care for and supervise their children.
[20] See also, United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) where the Court held that the right to declare bankruptcy is not one that is fundamental and that a statutory filing fee did not unconstitutionally burden a family unable to pay it.
[21] This justification was noted by the Hawaii Supreme Court in Rathburn v. Kaio, supra:

"We believe the object of the legislature in making the enactments was to extend the remedy for the benefit of persons injured by the tortious acts of infants so as to be more likely to produce adequate pecuniary results than would be a judgment only against a probably impecunious child ...." 23 Haw. at 544.
[22] W. Prosser, The Law of Torts 459 (4th ed. 1971); Piscataway, supra, 431 A.2d at 804.
[23] This conclusion is buttressed by the fact that almost all of the defendants in the present action are so insured.
[24] See, e.g., Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (irrebuttable presumption of nonresidency of students applying to university from out of state); Cleveland Bd. of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (irrebuttable presumption that pregnant women are unfit to teach); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (irrebuttable presumption that unmarried fathers are incompetent to raise their children).
[25] See, e.g., de Laurier v. San Diego Unified School District, 588 F.2d 674, 683 n.16 (9th Cir. 1978); Trafelet v. Thompson, 594 F.2d 623, 630 (7th Cir. 1979). In de Laurier the Ninth Circuit noted that ...

Although no Supreme Court decision has formally overruled LaFleur or other "irrebuttable presumption" decisions, it is apparent that the use of that doctrine has been severely limited .... 588 F.2d at 683, n.16.
[26] Nowak, Rotunda, and Young, Handbook on Constitutional Law 497 (1978); see also Note, The Irrebuttable Presumption Doctrine in the Supreme Court, 87 Harv.L.Rev. 1534 (1974).
[27] Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (irrebuttable presumption that credit payments made in more than four installments include a finance charge for purposes of the Truth in Lending Act); Marshall v. United States, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974) (irrebuttable presumption that drug addicts with more than two prior felony convictions are not eligible for civil commitment under the Narcotic Addict Rehabilitation Act); Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (irrebuttable presumption that a surviving widow or stepchild related to the deceased for less than nine months cannot receive Social Security benefits).
[28] Defendants rely on the case of Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). In that case, the Supreme Court considered the constitutionality of Georgia's Motor Vehicle Responsibility Act, which provides for the suspension of the license and motor vehicle registration of uninsured motorists involved in accidents who do not post security for the amount of damages claimed by injured parties. The Court held that the system was in violation of the due process clause because it confiscated a substantial benefit from uninsured motorists without any finding of fault or probable fault. The Court did not expressly mention the "irrebuttable presumption" doctrine.

Bell is distinguishable from this case. The Court, in Bell, stated that "we are not dealing here with a no-fault scheme. Since the statutory scheme makes liability an important factor in the State's determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing." 402 U.S. at 541, 91 S.Ct. at 1590.
Under HRS § 557-3, as in a no-fault scheme, the fault of the parents is not a relevant factor. Only the fault of the children is at issue, and the parents have an opportunity to litigate this question before liability is imposed. Moreover, Bell involved what was, in essence, a punitive scheme attempting to insure the compensation of tort victims by threatening uninsured defendants with the penalty of license revocation.
HRS § 577-3 only requires that parents compensate the victims of their children's torts. It does not impose an unrelated penalty for failure to do so.
[29] New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).
[30] San Antonio School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1293, 36 L.Ed.2d 16 (1973).
[31] Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).
[32] It is conceivable that the statute could be interpreted to impose liability on a father or mother who has never had custody over the child tortfeasor and, perhaps by court order, is precluded from exercising any control over the child. It is hard to conceive of a rational basis for imposing liability on the parent in such a situation. Cf. Piscataway, supra, 431 A.2d at 802-803.
[33] Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973); United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960).
[34] See, e.g., Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 18, 27, 23 L.Ed.2d 430 (1969); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).
[35] See, e.g., Broadrick, supra, 413 U.S. at 613, 618, 93 S.Ct. at 2916, 2919; Dombrowski v. Pfister, 380 U.S. 479, 491-92, 85 S.Ct. 1116, 1123-24, 14 L.Ed.2d 22 (1965).
[36] Id. Note 32.
[37] This court cannot say that the legislature would be unreasonable to conclude that a parent, though losing custody of a child shortly before that child commits a tort, still exerts a strong influence over the child's behavior and should bear responsibility along with the custodial parent for that child's tortious acts. The only fact that this court has before it is that Ms. Sasake lacked custody over her son for eight months prior to the incident at Pohakuloa. This fact alone does not give this court a basis for concluding that the statute would be unconstitutional as applied to her.