# IN RE: JAMES D.

[No. 53, September Term, 1982.]

*Decided February 4, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Richard S. Schrager,* with whom were *Thomas P. Smith* and *Smith, Joseph, Greenwald & Laake* on the brief, for appellant.

*Patricia E. McDonald, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

In this case we are presented with the question which we could not reach in *In Re John H.,* 293 Md. 295, 443 A.2d 594 (1982), the constitutionality of Maryland Code (1974, 1980 Repl. Vol., 1981 Cum. Supp.) § 3-829, Courts and Judicial Proceedings Article, making parents financially responsible under certain circumstances for the loss sustained by others as a result of their child's delinquent acts.[1]

---

1. The statute in its entirety as it stood at the time of the incident in question stated:

"(a) The court may enter a judgment of restitution against the parent of a child, or the child in any case in which the court finds a child has committed a delinquent act and during the commission of that delinquent act has:
"(1) Stolen, damaged, or destroyed the property of another;
"(2) Inflicted personal injury on another, requiring the injured person to incur medical, dental, hospital, or funeral expenses.

"(b) Considering the age and circumstances of a child, the court may order the child to make restitution to the wronged party personally.

We did not reach the issue of constitutionality in the case of *In Re John H.* because the parents did not argue that question to the trial judge. Hence, "we decline[d] to pass upon the issue, leaving that interesting question to another day in a case where the issue is squarely presented." The issue is squarely presented in this case; however, here we avoid constitutional conflicts by going no further than to hold that our interpretation of "parent" in the statute does not include the father or mother of a child where the child has been removed from their care and custody by court order and is not residing in their home at the time of the incident for which recovery is sought.

The facts are not in dispute. The juvenile, James D., and others on August 7, 1981, broke into and set fire to a model home. The house was completely destroyed. On the date in question the juvenile was under commitment to "the Juvenile Services Administration and the Montgomery County Board of Education" for placement at a particular school. He escaped from that facility and was absent without leave at the time of this incident. He had no contact with his father and mother from the time of his escape until his arrest for this act. He and his father and mother were directed to make restitution in the amount of $5,000. The father and mother

---

"(c) (1) A judgment rendered under this section may not exceed:
"(i) As to property stolen or destroyed, the lesser of the fair market value of the property or $5,000;
"(ii) As to property damaged, the lesser of the amount of damage not to exceed the fair market value of the property damaged or $5,000; and
"(iii) As to personal injuries, inflicted, the lesser of the reasonable medical, dental, hospital, funeral, and burial expenses incurred by the injured person as a result of the injury or $5,000.
"(2) As an absolute limit against any one child or his parents, a judgment rendered under this section may not exceed $5,000 for all acts arising out of a single incident.

"(d) A judgment of restitution against a parent may not be entered unless the parent has been afforded a reasonable opportunity to be heard and to present appropriate evidence in his behalf. A hearing under this section may be held as part of an adjudicatory or disposition hearing for the child.

"(e) The judgment may be enforced in the same manner as enforcing monetary judgments."

appealed to the Court of Special Appeals. We granted their petition for a writ of certiorari prior to argument in that court.

We begin our analysis by noting that at common law parents were generally not liable for the tortious acts of their children unless they had directed, encouraged, or ratified the child's act by accepting benefits from such act. *See, e.g., Lanterman v. Wilson,* 277 Md. 364, 354 A.2d 432 (1976); *Kerrigan v. Carroll,* 168 Md. 682, 179 A. 53 (1935); and *Myers v. Shipley,* 140 Md. 380, 116 A. 645 (1922). In the latter case this Court rejected the family car doctrine, saying that although such had been adopted "by courts of high standing and [those decisions were] supported by forcible and exceptionally able opinions," this Court was convinced "that some of them have disregarded principles of law applicable to the relations of principal and agent, and master and servant, which, before the days of automobiles, and especially before they had become so numerous on our streets and other highways, were supposed to be as firmly fixed as any principles known to the common law." 140 Md. at 384.

We traced the history of § 3-829, Courts and Judicial Proceedings Article, from the enactment of Ch. 151 of the Acts of 1955, applicable only to Montgomery County, on down to the present time in *In Re John H.,* 293 Md. at 300-01. We pointed out in that case that courts around the country are not in agreement on the issue of constitutionality of such statutes. See Annots., 54 A.L.R.3d 974, 1020-24 (1973) and 8 A.L.R.3d 612 (1966). We noted that in a scholarly opinion for the Court of Special Appeals the validity of Code (1957, 1966 Repl. Vol., 1972 Cum. Supp.) Art. 26, § 71A, the statutory predecessor of the present law, was upheld against constitutional attack by Judge Menchine in *Matter of Sorrell,* 20 Md. App. 179, 185-89, 315 A.2d 110, *cert. denied,* 271 Md. 740, 744 (1974).

So far as we have been able to determine only in *Corley v. Lewless,* 227 Ga. 745, 182 S.E.2d 766 (1971), has a statute placing liability upon parents been struck down. The

Georgia law placed liability upon "[e]very parent or other person in loco parentis having the custody and control over a minor child or children under the age of 17 ... for the wilful and wanton acts of said minor child or children resulting in death, injury or damage to the person or property ... of another." There was no limit of liability in the act. It was contended that the statute violated the due process clauses of the Federal and Georgia Constitutions. The court said in holding that the statute deprived the parents of property without due process of law:

> "*Code Ann.* § 105-113 is not penal but seeks to provide compensation in full for property damage or for personal injury. It imposed vicarious tort liability solely on the basis of the parent-child relationship. The requirements that the parent have 'custody and control' over the child and that the child's act be 'wilful and wanton' do not alter the fact that merely because of the relationship of parent and child, a tort liability is created which otherwise would not exist. It would not matter that the parent was entirely free from negligence or fault or even that he had no knowledge of his child's tort." 227 Ga. at 750.

Apparently the first case upholding the validity of such a statute was *Kelly v. Williams,* 346 S.W.2d 434 (Tex. Civ. App. 1961). The liability there was limited to $300. The Texas law permitted recovery from the parents of any minor under the age of eighteen and over the age of ten "who maliciously and wilfully damages or destroys property, real, personal or mixed, belonging to such owner." The act was made specifically inapplicable, however, "to parents whose parental custody and control of such child has been removed by court order, decree, or judgment." An attack on the statute under the due process clauses of the Texas and United States Constitutions was rejected on the ground that the liability imposed was "reasonable."

*Insurance Co. v. Faulkner,* 259 N.C. 317, 130 S.E.2d 645 (1963), was the next case to consider an attack upon such a law. That statute permitted parties to recover not to exceed $500 "from the parents of any minor under the age of eighteen (18) years, living with its parents, who shall maliciously or wilfully destroy property, real, personal or mixed, belonging to any such person," etc. The court held "the enactment . . . [to be] within the police power of the State of North Carolina, and that it is not violative of the provisions of Article I, section 17, of the State Constitution, or of the provisions of the Fifth Amendment to the Federal Constitution." 259 N.C. at 323-24. It said the "rationale [of the statute] apparently is that parental indifference and failure to supervise the activities of children is one of the major causes of juvenile delinquency; that parental liability for harm done by children will stimulate attention and supervision; and that the total effect will be a reduction in the anti-social behavior of children." 259 N.C. at 323. It quoted with approval a law review article which pointed out that family car statutes seem to rest on a balancing of the public interest and the individual interest, that courts have found such statutes to be within the police power of the state, that there seems to be no valid reason that the courts would hold otherwise on "vandalism" statutes, and that it seems fair and equitable to put the responsibility on the parent who may be at least partly to blame for the child's conduct, rather than upon the innocent injured party. 259 N.C. at 322.

*Mahaney v. Hunter Enterprises, Inc.,* 426 P.2d 442 (Wyo. 1967), rested its decision upholding a statute upon *Kelly* and *Faulkner.* The Wyoming act imposed liability not to exceed $300 upon the parents of a minor under the age of seventeen and over the age of ten "who maliciously and wilfully damages or destroys property, real, personal or mixed, belonging to such owner." It, too, contained an exemption for parents "whose parental custody and control of such child has been removed by court order, decree or judgment."

A trial court was involved in *Watson v. Gradzik,* 34 Conn. Supp. 7, 373 A.2d 191 (1977), with a statute placing liability

of not more than $1,500 upon the parents of an unemancipated minor who wilfully or maliciously causes damage to any property if the minor would have been liable for the damage if he had been an adult. A demurrer raising constitutional issues was overruled. The court said it was persuaded by the arguments set forth by the Texas court in *Kelly.* In holding the statute constitutional, the judge said:

> "The court is of the opinion that the regulation has a rational relationship to the preservation and promotion of the public welfare and that the defendants have failed to prove otherwise." 373 A.2d at 193.

It earlier had observed that because parents do have the authority to compel obedience of their children, it would not seem unreasonable to hold them responsible for exercising that authority. *Id.* at 192. It found persuasive a law review article quoted by the Texas court to the effect that in all fairness it is better that the parents of these young tortfeasors be required to compensate those who are damaged, even though the parents be without fault, rather than to let the loss fall upon the innocent victim. *Id.* at 193.

In *Rudnay v. Corbett,* 53 Ohio App.2d 311, 374 N.E.2d 171 (1977), the court had before it a challenge to the constitutionality of a statute permitting the owner of property to recover not more than $2,000 from the parents having the custody and control of a minor under the age of eighteen years "who willfully damages property belonging to such owner." The court said in rejecting the challenge:

> "Although this court concludes that the primary purpose of this section is to compensate the innocent victims of property damage, we do not think it inconsistent that the legislature may have intended an additional result by enactment of R. C. 3109.09. That is, that the legislation might tend to curb juvenile delinquency by rendering parents jointly and severally liable for the willful misconduct of their minor children. Parental control of minor children

must necessarily remain society's first line of defense against destructive-minded delinquents." 53 Ohio App.2d at 315.

An Illinois statute providing that parents or legal guardians of an unemancipated minor above the age of eleven years who resides with such parent or legal guardian was "liable for actual damages for the willful or malicious acts of such minor which cause injury to a person or property" was before the intermediate appellate court in *Vanthournout v. Burge,* 69 Ill. App.3d 193, 387 N.E.2d 341 (1979). The statute was challenged on the ground that it deprived a parent of property without due process of law by imposing liability without regard to fault. In holding that the defendant had not met his burden of showing that the act in question was unconstitutional, the court said:

> "The legislative purpose of the Illinois Parental Responsibility Act is two-fold: (1) to compensate innocent victims of juvenile misconduct that is willful or malicious; and (2) to place upon the parents the obligation to control a minor child so as to prevent intentional harm to others. The foregoing objectives are legitimate goals to be attained by legislation. We find that the means selected by placing the burden on the parent-child relationship is reasonably related to these goals." 69 Ill. App.3d at 196.

*Piscataway Tp. Bd. of Ed. v. Caffiero,* 86 N.J. 308, 431 A.2d 799, *appeal dismissed,* 454 U.S. 1025 (1981), dealt with the validity of a New Jersey statute providing that the parents or guardian of any pupil who injured any school property should "be liable for damages for the amount of the injury to be collected by the board of education of the district in any court of competent jurisdiction . . . ." The trial court held the statute unconstitutional. The Appellate Division reversed, not without dissent, however. The Supreme Court of New Jersey said that the dissent "believed that vicarious liability without fault could be imposed only where a risk of

harm has been created by the act or omission of the person held liable." In upholding the statute against attack on due process grounds, the court said:

"The Legislature apparently believed that it was more important to compensate the public and to deter delinquent behavior than to spread costs. We cannot say that such purposes are unreasonable and therefore an invalid basis for imposition of vicarious liability. As long as the means chosen by the Legislature have a rational relation to obtaining the objective sought, the statute will not be in violation of due process of law as an arbitrary or capricious enactment.

"The existence of the parent-child relationship provides a rational basis for imposing liability and is a reasonable means to accomplish the purposes of compensation and deterrence. The United States Supreme Court has recognized that 'parents have an important "guiding role" to play in the upbringing of their children.' *H.L. v. Matheson,* [450] *U.S.* [398, 410], 101 *S.Ct.* 1164, 1172, 67 *L.Ed.*2d 388, 399 (1981); *Bellotti v. Baird,* 443 *U.S.* 622, 637-39, 99 *S.Ct.* 3035, 3045-46, 61 *L.Ed.*2d 797 (1979). The Legislature could have reasonably believed that subjecting parents to vicarious liability for their children's willful and malicious acts of vandalism would encourage parents to exercise their 'guiding role' in the upbringing of their children. Through better parental supervision and guidance, the Legislature hoped to deter delinquent conduct. Our concern is not whether that hope has been or will be fulfilled but whether there is a rational basis for it. Though we acknowledge the difficulties of being a parent, we cannot say that there is no rational basis for the statute." 86 N.J. at 319-20.

Hawaii has a statute (with an origin back in 1846 when a similar law was passed) providing that the parents "of unmarried minor children shall jointly and severally be liable in damages for tortious acts committed by their children . . . ." A challenge to its constitutionality was considered in *Bryan v. Kitamura,* 529 F.Supp. 394 (D. Hawaii 1982). The trial judge there reasoned:

"HRS section 577-3 clearly has a rational relation to legitimate government interests. One justification for the statute is that it provides a remedy for tort victims who would otherwise receive no compensation for their injuries. Imposition of vicarious liability without fault is normally justified by the policy decision that the person held liable is in a position to shift the costs of an injury to the public at large through the purchase of liability insurance. This rationale certainly holds true in the case of the Hawaii parental liability statute. A minor is, in almost all cases, judgment proof and without personally acquired insurance. If fault is not imputed to the parent, the child's victim must bear the entire cost of the injury suffered. The child's parents, however, are in a position to spread the cost of the injury to the public at large through the purchase of liability insurance.

"Another possible justification for the statute is that it deters juvenile delinquency by providing an incentive to parents to exercise greater supervision over the activities of their children. Defendants argue that the statute is not tailored to meet this goal because the statute imposes liability even where parents have exercised due care in supervising their children. The legislature, however, may have wished to impose an even greater duty on parents to affirmatively prevent tortious acts by their children. In any event, this court need not find that the statute is the best method for deterring juvenile delinquency, or that it deters

juvenile delinquency at all, but only that it has a rational basis. This court cannot say that HRS section 577-3 is without a rational relation to a legitimate government purpose." 529 F.Supp. at 399-400.

In that case the defendants claimed that the Hawaii statute contained constitutional obligations not found in the New Jersey statute. The court commented in n. 7:

"For example, defendants claim that HRS 577-3 is defective because it imposes liability on natural guardians, regardless of custody, and does not impose liability on appointed guardians. The New Jersey statute applies to both parents and guardians and was interpreted by the Supreme Court of New Jersey to apply only to parents with custody of their children. See, Piscataway, supra, 431 A.2d at 803." 529 F.Supp. at 397.

In Piscataway the New Jersey court explained:

"[B]ecause one purpose of the statute is to aid the disciplining of pupils, we believe that the words 'parents or guardian' were intended to refer only to the person or persons who are responsible for a child. The inclusion of the word 'guardian' indicates that the Legislature did not intend to impose liability solely on the basis of parental relationship. The statute applies only to persons who have legal custody and control of a child and therefore can be charged on that basis with responsibility for the child's conduct." 86 N.J. at 316.

It went on to say that it took "this opportunity to construe the statute more narrowly than its literal wording," and thus, that there could be no claim against parents under the statute absent a showing "that the parents charged with liability had legal custody and control of the pupil at the time of his unlawful conduct." Id. at 317.

In Sorrell, 20 Md. App. 179, the court said:

"The legislative determination here demonstrates a legitimate State interest in a matter affecting the general welfare. The remedy selected for the protection and promotion of that determination has not been shown to be arbitrary, oppressive or unreasonable. Article 26, § 71A as implemented by the procedural safeguards of § 70-22 and Maryland Rule 922, does not offend against the Maryland and Federal Constitutions." 20 Md. App. at 189.

It will be observed that each of the courts upholding statutes similar to that of the one in the case at bar have done so upon the theory that in each instance it was a valid exercise of the police power, applying the rational basis test. In *Bowie Inn v. City of Bowie,* 274 Md. 230, 335 A.2d 679 (1975), Judge Eldridge succinctly stated for this Court the test to be applied:

"The test for constitutionality under the Due Process Clause is whether a statute, as an exercise of the state's police power, bears a real and substantial relation to the public health, morals, safety, and welfare of the citizens of this state. *Md. Bd. of Pharmacy v. Sav-A-Lot,* 270 Md. [103,] 106 [, 311 A.2d 242 (1973)]; *Davis v. State,* 183 Md. 385, 397, 37 A.2d 880 (1944). The exercise by the Legislature of the police power will not be interfered with unless it is shown to be exercised arbitrarily, oppressively or unreasonably. *Salisbury Beauty Schools v. St. Bd.,* 268 Md. 32, 48, 300 A.2d 367 (1973). The wisdom or expediency of a law adopted in the exercise of the police power of a state is not subject to judicial review, and the law will not be held void if there are any considerations relating to the public welfare by which it can be supported. *Sav-A-Lot, supra,* 270 Md. at 106; *Salisbury Beauty Schools v. St. Bd., supra,* 268 Md. at 48-49." 274 Md. at 236.

The situation of the parents in the case at bar is readily distinguishable from that of parents in *Repko v. Seriani,* 3 Conn. Cir. 374, 214 A.2d 843 (1965), and *Potomac Insurance Company v. Torres,* 75 N.M. 129, 401 P.2d 308 (1965), in both of which parents were held responsible notwithstanding the fact that the child in question was committed to the custody of the state. In *Repko* the child had been sent to the home of his father on an experimental basis and presumably was under the control of the father. In *Torres* the minor had eloped to the home of the parents and was residing there at the time of the incident in question. Here the minor was not at the home of his father and mother. Control of his actions was supposed to be in a designated agency of the State. Whatever may be the theory generally, in the context of this case the father and mother cannot be expected to have prevented the depredations which took place when their son not only was not residing at their home but had been removed from the home by action of the State and lodged with a State agency. Their liability is based only upon being parents. We agree with the Supreme Judicial Court of Massachusetts when it said recently in a different context in *Spence v. Gormley,* 387 Mass. 258, 439 N.E.2d 741 (1982):

> "[W]hen the only justification for a legal burden, penalty, or classification is to punish or deter conduct, the burden cannot fairly be imposed on individuals who have no means of avoiding it. If punishment or deterrence is directed toward individuals who cannot affect the offending conduct, it is illogical. If it is directed toward the wrongdoer, whom the government hopes to reach through its action toward those close to him, it may be logical and effective, but it may also be contrary to basic justice. See *Plyler v. Doe,* 457 U.S. at 220, 102 S.Ct. [2382,] 2396-97 [, 72 L.Ed.2d 786 (1982)]; *Weber v. Aetna Cas. & Surety Co., supra* at 175, 92 S.Ct. at 1406." 439 N.E.2d at 748.

We have said that where a statute is subject to two con-
structions, one of which will result in the legality and effec-
tiveness of the statutory provisions being construed and the
other of which might make it illegal and nugatory, courts
will prefer the construction which will result in its legality
and effectiveness. *Pickett v. Prince George's Co.,* 291 Md.
648, 661, 436 A.2d 449 (1981); *Williams and Fulwood v.
Director,* 276 Md. 272, 295, 347 A.2d 179 (1975), *cert. denied*
425 U.S. 976 (1976), and *District Land v. Wash. S. S. C.,* 266
Md. 301, 312, 292 A.2d 695 (1972). We have also held that
a statute will be construed so as to avoid a conflict with the
Constitution whenever that course is reasonably possible.
*Pickett, Williams,* and *Deems v. Western Maryland Ry.,* 247
Md. 95, 113, 231 A.2d 514 (1967).

We note that in statutes of five states, Georgia, Illinois,
North Carolina, Texas, and Wyoming, no liability is placed
on a father or mother where the juvenile is in the custody of
others, and that New Jersey by statutory construction has
reached a similar result. The term "parent" is commonly
understood to mean a father or a mother, but Webster's New
International Dictionary (2d ed. 1947) is authority for the
fact that the term "is sometimes used popularly and in stat-
utes to include persons standing in loco parentis other than
the natural parents." In fact, an earlier edition (1930) goes
on to add "as in Lord Campbell's Act, where it is defined to
include    father,    mother,    grandfather,    grandmother,
stepfather, or stepmother . . . ." Problems of constitutionality
would arise under the Fourteenth Amendment to the Consti-
tution of the United States and Maryland Declaration of
Rights Art. 24 were we to interpret the statute here as
applying to a father or a mother who did not have actual
custody and control over a child at the time of the act in
question. Accordingly, we prefer to follow the lead of the
New Jersey court and "take this opportunity to construe the
statute more narrowly than its literal wording." We hold
that the General Assembly when it enacted this law could

not have intended to place liability upon a mother or a father for an act of the child committed while in the custody of the State.

*Judgment reversed; costs to be paid by Montgomery County.*