505 A.2d 507

In re RAMONT K.

No. 102, Sept. Term, 1985.

Court of Appeals of Maryland.

March 6, 1986.

David L. Addison, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

SMITH, Judge.

We shall here hold that a grandmother does not come within the term "parent" as used in Maryland Code (1974, 1984 Repl.Vol.) § 3–829, Courts and Judicial Proceedings Article, pertaining to restitution on behalf of children involved in certain delinquent acts. Hence, we shall reverse the judgment of the Circuit Court for Baltimore City.

The facts are not in dispute. In fact, in the Court of Special Appeals the parties filed a statement of the case pursuant to the provisions of Maryland Rule 1026(e). The appellant, Darnzella Stewart, is the grandmother of Ramont K. She has reared him since he was three years old. Both of his parents are deceased. Ramont was found to be a delinquent on the basis of an assault. The State claimed

restitution in the amount of $455 on behalf of the victim pursuant to the provisions of § 3–829. The juvenile master found Mrs. Stewart was not a parent within the meaning of the statute. The State excepted. The then juvenile judge filed an opinion finding the grandmother to be a parent and remanded the case to the master. He relied upon our decision in *In Re: James D.*, 295 Md. 314, 455 A.2d 966 (1983). The master was not convinced but recognized the determination. He then recommended restitution in the amount of $45. Exceptions were filed before the successor juvenile judge who overruled the exceptions and ordered restitution. An appeal to the Court of Special Appeals followed. We issued a writ of certiorari on our own motion prior to hearing in the intermediate appellate court in order that we might address the statutory issue here involved.

Section 3–829 provides in pertinent part:

"(a) The court may enter a judgment of restitution against the parent of a child, or the child in any case in which the court finds a child has committed a delinquent act and during the commission of that delinquent act has:

"(1) Stolen, damaged, or destroyed the property of another;

"(2) Inflicted personal injury on another, requiring the injured person to incur medical, dental, hospital, or funeral expenses."

In *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984), we repeated a number of the rules for statutory construction set forth in *Police Comm'r. v. Dowling*, 281 Md. 412, 418–19, 379 A.2d 1007, 1010–11 (1977). We summarize the rules pertinent to this controversy. The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent, the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the Gener-

al Assembly. A court may not insert or omit words to make a statute express an intention not evidenced in its original form. The legislative body is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. Finally, absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.

In *James D.*, 295 Md. 314, 455 A.2d 966, a constitutional attack was mounted on § 3–829. In that instance the juvenile in question was under commitment to "the Juvenile Services Administration and the Montgomery County Board of Education" for placement at a particular school at the time he broke into and set fire to a model home. He escaped from that facility and was absent without leave at the time of the incident. He had no contact with his mother and father from the time of his escape until his arrest for the incident. An order of restitution was entered against his parents.

We began our analysis in that case by noting that at common law parents were generally not liable for the tortious acts of their children unless they had directed, encouraged, or ratified the child's act by accepting benefits from such act, citing *Lanterman v. Wilson*, 277 Md. 364, 354 A.2d 432 (1976); *Kerrigan v. Carroll*, 168 Md. 682, 179 A. 53 (1935); and *Myers v. Shipley*, 140 Md. 380, 116 A. 645 (1922). We pointed out that we traced the history of § 3–829 from the enactment of Ch. 151 of the Acts of 1955, applicable only to Montgomery County, on down to the then present time in *In Re John H.*, 293 Md. 295, 300–01, 443 A.2d 594, 596–97 (1982). We reviewed cases from around the country that had considered the issue of constitutionality of statutes similar to § 3–829. We noted that in *Piscataway Tp. Bd. of Ed. v. Caffiero*, 86 N.J. 308, 431 A.2d 799, *appeal dismissed*, 454 U.S. 1025, 102 S.Ct. 560, 70 L.Ed.2d 470 (1981), the New Jersey court "construe[d] the statute

more narrowly than its literal wording," and held that there could be no claim against parents under the statute absent a showing "that the parents charged with liability had legal custody and control of the pupil at the time of his unlawful conduct."

We pointed out that where a statute is subject to two constructions, one of which will result in the legality and effectiveness of the statutory provisions being construed and the other of which might make it illegal and nugatory, courts will prefer the construction which will result in its legality and effectiveness. We further pointed out that statutes are construed so as to avoid a conflict with the Constitution whenever that course is reasonably possible. We then said:

"We note that in statutes of five states, Georgia, Illinois, North Carolina, Texas, and Wyoming, no liability is placed on a father or mother where the juvenile is in the custody of others, and that New Jersey by statutory construction has reached a similar result. The term 'parent' is commonly understood to mean a father or a mother, but Webster's New International Dictionary (2d ed. 1947) is authority for the fact that the term 'is sometimes used popularly and in statutes to include persons standing in loco parentis other than the natural parents.' In fact, an earlier edition (1930) goes on to add 'as in Lord Campbell's Act, where it is defined to include father, mother, grandfather, grandmother, stepfather, or stepmother . . . .' Problems of constitutionality would arise under the Fourteenth Amendment to the Constitution of the United States and Maryland Declaration of Rights Art. 24 were we to interpret the statute here as applying to a father or a mother who did not have actual custody and control over a child at the time of the act in question. Accordingly, we prefer to follow the lead of the New Jersey court and 'take this opportunity to construe the statute more narrowly than its literal wording.' We hold that the General Assembly when it enacted this law could not have intended to place liability upon a

mother or a father for an act of the child committed while in the custody of the State." 295 Md. at 327–28, 455 A.2d at 972.

Our reference to the definition in Webster pertaining to persons standing in loco parentis other than the natural parents and the further reference to the term "parent" in Lord Campbell's Act as including grandfather and grandmother was seized upon by the first juvenile judge. In fact, he said, "In adopting the above definition of 'parent', the Court acknowledged that a person standing in loco parentis (including grandmother) is included in the definition of 'parent.'" Such was not, as will appear from the language we have quoted, the holding of *James D.* and our discussion was not intended to imply that one standing in loco parentis to a delinquent juvenile would be a parent within the meaning of § 3–829.

Counsel for Mrs. Stewart conceded at oral argument that she does in fact stand in loco parentis to Ramont but he further argues that that is not dispositive. We agree.

We next had the statute before us in *In Re: Arnold M.,* 298 Md. 515, 471 A.2d 313 (1984), a case that appellant contends controls this case. In that instance four juvenile offenders were committed to the State Department of Health and Mental Hygiene and placed at the Regional Institute for Children and Adolescents, a State residential treatment facility for emotionally disturbed youths. They eloped and assaulted and injured a 74-year-old woman during an attempted robbery. The juvenile judge entered a restitution order against the State. Chief Judge Murphy summarized for the Court the judge's holding:

"The juvenile court read *James D.* in light of § 3–829 'to provide the victim [of a delinquent act] with some means of compensation for loss of property or personal injury.' It said that no such remedy was available against the child's parents where the State had custody of the juvenile at the time of the delinquent act and, further, that it was not realistic to believe that the juvenile would satisfy a judgment of restitution. Consequently, the trial

judge concluded that the legislature did not intend to restrict the word 'parent' in § 3–829 to the child's biological parents but rather intended to include one standing *in loco parentis* to the juvenile, other than the natural parents. He said that the State's custody and control of a committed juvenile placed it in such an *in loco parentis* position and that it would, therefore, be 'liable for the full restitution to a victim in a situation in which a juvenile escaped or eloped from state custody, and committed some type of offense against the person or property of another.'" 298 Md. at 519, 471 A.2d at 315.

Judge Murphy pointed out for the Court that § 3–829 is one of thirty-five sections comprising the Juvenile Causes Subtitle of the Courts and Judicial Proceedings Article and that the term "parent" is not defined in any of these sections. The Court held:

"We think it fully evident that the plain and popularly understood meaning of the term parent is, as we said in *James D.*, 'a father or a mother.' 295 Md. at 327, 455 A.2d 966. That, in our view, is the legislature's intended meaning of the term as used in § 3–829, qualified only by the exclusion of mothers and fathers not in custody of the juvenile at the time of the delinquent act. That the State may stand *in loco parentis* to juveniles committed to its institutional care and custody does not make it a 'parent' within the contemplation of the statute. Had the legislature intended that the State come within the ambit of the statute, it would not have used the word 'parent' in § 3–829, since no commonly understood meaning of that word encompasses the State, its agencies or instrumentalities. *See Brown [v. Brown,]* 287 Md. [273,] 285, 412 A.2d 396[, 403 (1980) ], stating the principle that where the legislature intends that a commonly used word have other than its ordinary meaning, it generally defines explicitly the scope of the word as so used. Moreover, it is a well-recognized principle that the State does not come within the provisions of a statute unless the enactment specifically names the State or manifests a clear and

undisputable intent that it is within the provisions of the statute. *City of Baltimore v. State,* 281 Md. 217, 223, 378 A.2d 1326 (1977); *Harden v. Mass Transit Adm.,* 277 Md. 399, 408, 354 A.2d 817 (1976)." 298 Md. at 521–22, 471 A.2d at 316.

*Arnold M.* is not controlling but it is very persuasive. The common, ordinary understanding of the term "parent" does not include a grandparent. Where the General Assembly has desired to make one standing in loco parentis responsible it has known how to do so. See, for instance, Code (1957, 1982 Repl.Vol., 1985 Cum.Supp.) Art. 27, § 35A(b) dealing with child abuse stating:

> "(b) *Violation constitutes felony; penalty.*—A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child who causes abuse to the child is guilty of a felony and on conviction is subject to imprisonment in the penitentiary not exceeding 15 years."

To hold as the State would have us hold would constitute writing words into the statute.

JUDGMENT REVERSED; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.