939 A.2d 139

**Ramiro Silba ALAVEZ**

v.

**MOTOR VEHICLE ADMINISTRATION.**

No. 28, Sept. Term, 2007.

Court of Appeals of Maryland.

Jan. 9, 2008.

Eldridge, J., Retired, Specially Assigned, dissented and filed opinion in which Greene, J., joined.

Leonard Stamm (Andrea Hayduk, Goldstein & Stamm, P.A., Greenbelt), on brief, Joseph Vallario, Jr. (Vallario & Collins, Suitland), on brief, for petitioner.

Leight D. Collins, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for respondent.

James M. Hostetler, Francis D. Murnaghan, Jr., Appellate Advocacy Fellow, Debra Gardner, Public Justice Center, Baltimore, Eliza Leighton, CASA of Maryland, Inc., Silver Spring, amicus curiae.

Argued before RAKER, HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, Specially Assigned), ALAN M. WILNER, (Retired, Specially Assigned), DALE R. CATHELL, (Retired, Specially Assigned), JJ.

WILNER, J.

Maryland Code, § 16–103.1 of the Transportation Article (TR) provides, in relevant part, that the Maryland Motor Vehicle Administration (MVA) "may not issue a driver's license to an individual . . . [d]uring any period for which the individual's license to drive is revoked, suspended, refused, or canceled in this or any other state, unless the individual is eligible for a restricted license under § 16–113(e) of this subtitle." Less than three years ago, in *Gwin v. MVA*, 385 Md. 440, 869 A.2d 822 (2005), *cert. denied*, 546 U.S. 823, 126 S.Ct. 359, 163 L.Ed.2d 67 (2005), we held that the statute means what it says and that MVA may not issue a Maryland driver's license to someone whose license to drive has been revoked or is currently in suspension in another State, even if the revocation or suspension is permanent in that State. That holding, based on the unambiguous, plain wording of the statute, also dooms petitioner, Ramiro Alavez's, quest for a Maryland driver's license.

## BACKGROUND

Petitioner, currently a resident of Maryland, is a citizen of Mexico. He said that he came to the United States in 1988 and resided initially in California, where he was able to obtain a driver's license from that State. Two years later, he obtained a Virginia driver's license. He claims that in 1991 he

applied for a license in New Jersey but was turned down because he was not "a legal immigrant."

The actual history of what occurred in New Jersey, as revealed in the records of the New Jersey Motor Vehicle Commission (NJMVC) is not entirely consistent with that assertion. Under New Jersey law, a driver's license is issued for a 48–month period, subject to renewal in the manner prescribed by the NJMVC. *See* N.J.S.A. § 39:3–10. At least since 1993, New Jersey law has also provided:

"In addition to requiring an applicant for a driver's license to submit satisfactory proof of identity and age, the commission also shall require the applicant to provide, as a condition for obtaining a permit and license, satisfactory proof that the applicant's presence in the United States is authorized under federal law.

If the commission has reasonable cause to suspect that any document presented by an applicant as proof of identity, age or legal residency is altered, false or otherwise invalid, the commission shall refuse to grant the permit or license until such time as the document may be verified by the issuing agency to the commission's satisfaction."

*Id.* Those provisions also apply to identification cards issued by NJMVC to persons who do not have a New Jersey driver's license. *See* N.J.S.A. § 39:3–29.3.

Regulations adopted by NJMVC allow a person from a foreign country who is in New Jersey for a year or less to operate a motor vehicle in the State if the person holds a current driver's license from that country. *See* N.J. Admin. Code tit. 13, § 21–8.2(e). The regulations also permit a person from a foreign country who is in New Jersey for a year or less but who does not hold a current license from the foreign country to apply for a New Jersey license or permit The Administrator, however, must suspend or revoke such a license upon its expiration or upon expiration of the holder's "lawful presence in the United States unless it is demonstrated that the person's continued presence in the United States is authorized under Federal Law." *Id.,* § 21–8.2(f).

One of the NJMVC regulations requires an applicant for a license, permit, or non-driver identification card to furnish to the Commission, upon its request, "proof of identity and date of birth and proof that the applicant's presence in the United States is authorized under Federal law," and it lists the kinds of documents that will suffice. Among the documents pertaining to proof of lawful presence in the U.S. are a U.S. birth certificate, adoption papers, a certificate of naturalization or citizenship, a current and verified alien registration card, specific documents establishing refugee status, and a photo employment authorization card. N.J. Admin. Code tit. 13, § 21–8.2.

NJMVC records, placed into evidence in this case, indicate that Alavez received a commercial and a non-commercial driver's license on September 30, 1987, which is before he said he emigrated to the U.S. It would appear that NJMVC was unaware, when it issued the licenses, that Alavez maintained his Virginia license, as New Jersey law, like that of Maryland, requires that a foreign license be surrendered prior to the issuance of a domestic one. *See* N.J.S.A. § 39:3–10; TR § 16–111.1(f)(2). When the New Jersey licenses expired four years later, on September 30, 1991, they were "withdrawn" because of "misrepresentation of identity or other facts on application for driver license." [1]  Nonetheless, Alavez continued to drive in New Jersey. On February 12, 1995, his two licenses, which somehow were treated as still in effect, were suspended, again for misrepresenting facts on his application (D02). In March, 1995, Alavez was convicted of driving on a suspended license, and, when the licenses actually expired in 1995, they were again "withdrawn," this time because of the "driving while license suspended" conviction (ACD Code B26).

---

**1.** The documents show as the reason for withdrawal "D02." That designation is part of an "ACD Code" that was established by the American Association of Motor Vehicle Administrators to facilitate the electronic sharing of information among the motor vehicle administrations in the 50 States and the District of Columbia. D02 is the code for misrepresentation of identity or other facts on applications for driver license. It is not clear whether, in New Jersey, a withdrawal is in the nature of a non-renewal or a suspension.

During the entire time Alavez was in New Jersey, he maintained his Virginia driver's license. In December, 2002, he surrendered that license and was issued a Maryland driver's license. There is no indication that MVA was then aware that his New Jersey licenses had been suspended or withdrawn. In January, 2003, that fact was discovered, and MVA notified Alavez that, as a result of the New Jersey suspension, his Maryland license would be cancelled on February 27, 2003. To avoid cancellation or to re-apply for a Maryland license after cancellation, he was told, he would need to submit a "clearance letter or driving record" confirming that his driving privilege had been restored in New Jersey. No such confirmation was forthcoming, and his license was cancelled.

At some point in 2005, Alavez made inquiry to NJMVC about his New Jersey license and was informed, on November 3, 2005, that, if he were foreign-born, he would need to submit notarized copies of documents that prove his presence in the United States to be lawful under Federal law. Through counsel, Alavez then requested some sort of review by MVA, which contacted NJMVC. The New Jersey Commission confirmed that it had suspended Alavez's license "because of failure to present acceptable proof of legal name, date of birth, valid address, social security number, legal presence in this country and/or provide testimony concerning fraud/misuse of the driver license and/or registration under investigation at the time of the application for a New Jersey driver license." The letter further advised that unless Alavez "can provide proof that [his] presence here is authorized under Federal Law by providing valid and acceptable immigration documentation, [he] will not be eligible for a New Jersey license or permit or for restoration of [his] New Jersey driving privileges."

Apart from this written response, MVA officials had a number of telephone conversations with their New Jersey counterparts, including counsel to NJMVC. Based on those conversations, MVA advised Alavez on April 4, 2006 that the "identity suspensions" in New Jersey were "as the result of [Alavez] submitting fraudulent [United States Citizenship and

Immigration Services] identification to obtain and/or retain a New Jersey permit or license" and that the suspensions will "stay suspended until valid and acceptable immigration documentation is presented proving that [his] legal presence is authorized by federal law." Citing TR § 16–103.1 and *Gwin v. MVA, supra,* MVA advised that it could not issue a Maryland driver's license until the New Jersey suspensions were cleared. MVA confirmed that decision on April 25, 2006, and advised that its decision was final.

Rather than seek immediate judicial review, as suggested by MVA, Alavez requested an administrative hearing, and the matter was referred to the Office of Administrative Hearings.[2] After hearing the evidence, essentially as recounted above, the Administrative Law Judge (ALJ) found as a fact that Alavez's New Jersey driver's license had been suspended in 1991 for obtaining the license "with forged documents," that the suspension remained in effect, and, based largely on Alavez's concession, that he could not take the steps identified by NJMVC as necessary to terminate the suspension. She concluded that TR § 16–103.1 was not a discretionary statute, but precluded MVA from issuing a Maryland license during the period of the New Jersey suspension. Addressing Alavez's argument that his due process rights were violated because he is unable to comply with the New Jersey requirement, the ALJ noted that, if there was any due process violation, it arose from the New Jersey statute, as implemented by NJMVC, not from TR § 16–103.1. Upon those findings and conclusions, the ALJ sustained the cancellation of Alavez's Maryland driver's license.

---

2. Contemporaneously, Alavez wrote to NJMVC, pointing out that he had moved to Maryland, that Maryland does not require lawful presence in the United States as a condition to obtaining a driver's license, asking that the New Jersey suspension be withdrawn so that he could obtain a Maryland license, and demanding a hearing regarding what he characterized as "this unlawful suspension." It is not clear whether that demand was pursued. We assume from what occurred in Maryland that NJMVC did not withdraw its suspension.

The Circuit Court for Baltimore County, on Alavez's petition for judicial review, affirmed the ALJ's ruling, concluding that there was sufficient evidence to support her findings and agreeing that TR § 16–103.1 mandated the action taken by MVA. We granted Alavez's petition for *certiorari* to consider the broad question raised of whether MVA erred in canceling the Maryland license. We shall affirm.

## DISCUSSION

The issue before us is not whether Maryland should issue a driver's license to undocumented or illegal aliens. We do; it is not prohibited. Nor are we concerned with whether New Jersey's contrary policy is wise or fair; that is an issue for the New Jersey legislature, which established the policy. Maryland has a statute, TR § 16–103.1, which prohibits MVA from issuing a driver's license to an individual during any period in which the individual's license to drive is revoked, suspended, refused, or cancelled "in this or any other state." The two questions presented by Alavez are (1) whether § 16–103.1 was intended by our General Assembly to apply only to out-of-State revocations, suspensions, refusals, or cancellations based on conduct that would lead to a suspension or refusal of a license in Maryland, and (2) if not, whether the statute violates Alavez's substantive due process and equal protection rights under Article 24 of the Maryland Declaration of Rights. To the extent our resolution of those questions hinges on *Gwin v. MVA, supra*, 385 Md. 440, 869 A.2d 822, we are asked to overrule that decision.

### Construction of TR § 16–103.1

■ The rules of statutory construction are well-established. As we pointed out most recently in *Sprenger v. PSC*, 400 Md. 1, 29, 926 A.2d 238, 254 (2007), our goal is to ascertain and effectuate the intent of the Legislature, and, to do that, we look first to the language of the statute, giving that language its natural and ordinary meaning. As stated in *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003) and confirmed in *Sprenger, supra*, at 29, 926 A.2d at 254, "[a]

court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application."

There is nothing uncertain or ambiguous about the pertinent part of TR § 16–103.1. It says that MVA "may not issue a driver's license to an individual ... [d]uring any period for which the individual's license to drive is revoked, suspended, refused, or canceled in this or any other state, unless the individual is eligible for a restricted license under § 16–113(e) of this subtitle." Alavez would have us insert another exception—unless the revocation, suspension, or cancellation in the other State is for conduct that would not warrant that result in Maryland. To add that exception, to read the statute in that manner, would be to do precisely what we have consistently said a court may not do—add words to create an exception or limitation that the Legislature chose not to create.

Not only does the plain wording of the statute preclude such a "forced or subtle" interpretation, the legislative history of the provision makes clear a legislative intent not to create such an exception. The prohibition against the issuance of a Maryland driver's license to one whose license to drive has been revoked, suspended, refused, or cancelled dates back at least to the 1943 rewriting of the Motor Vehicle Code. *See* 1943 Md. Laws, ch. 1007. The 1943 law provided, in pertinent part:

"[t]he Department [of Motor Vehicles] shall not issue any license hereunder:

3. To any person, as an operator or chauffeur, whose license has been suspended during such suspension nor to any person whose license has been revoked, until the expiration of three (3) months after such license was revoked ..."

In modified form, that provision survived a substantive rewriting of the Motor Vehicle Code in 1970 (1970 Md. Laws, ch. 534, enacting Art. 66½, § 6–103 ¶ 2) and the 1977 code revision enactment of titles 11 through 27 of the Transporta-

tion Article (1977 Md. Laws, ch. 14, enacting TR § 16–1.03.1). In that penultimate form, the statute precluded MVA from issuing a driver's license to an individual "[d]uring any period for which his license to drive is revoked, suspended, refused, or canceled."

MVA construed the statute, as so written, as applying to revocations, suspensions, refusals, and cancellations in both Maryland and other States, but apparently that approach was challenged, on the ground that the term "license" was defined in TR § 11–128 as any "(1) Driver's license; and (2) Any other license or permit to drive a motor vehicle that is issued under or granted by *the laws of this State* ..." Seeking to remove any ambiguity and make clear that its approach was correct, MVA, through the Department of Transportation, proposed a Departmental bill in the 1993 Legislative Session to add to the existing language in § 16–103.1 "in this or any other State unless the individual is eligible for a restricted license under § 16–113(e) of this subtitle." With one technical amendment to correct a printing error, the bill was enacted as proposed.

The addition of "in this or any other State" certainly clarified any ambiguity regarding the *duty* of MVA to honor and enforce revocations, suspensions, refusals, and cancellations decreed in other States, but the exception is equally telling. Section 16–113(e) allows MVA to issue (1) a driver's license valid only in Maryland when the applicant's driving privilege was suspended in another State for failing to comply with the financial responsibility requirements of that State, and (2) subject to certain conditions, a temporary driver's license valid only in Maryland and good for only 90 days when the applicant's driving privilege was suspended in another State for failing to comply with the licensing requirements of that State, for which a comparable violation in this State would not have resulted in revocation or suspension. One of the conditions to that exception is that MVA determine that the applicant "will be able to take any actions required by the other jurisdiction for reinstatement of the privilege to drive in that jurisdiction." TR § 16–113(e)(1)(ii)4.

What this shows is that the Legislature, understanding that it was mandating a very broad reciprocity and that, by doing so, would be precluding the issuance of a Maryland driver's license to anyone whose license or privilege to drive had been revoked, suspended, refused, or cancelled in any other State, even for reasons that would not produce such action in Maryland, was willing to draw two specific exceptions to that broad reciprocity, but only those two. No argument is, or could reasonably be, made here that Alavez falls within either of those exceptions.[3] It is not for this Court, by judicial fiat, to add another one.[4]

### Article 24

■ Article 24 of the Maryland Declaration of Rights provides, in relevant part, that no person ought to be disseized of his liberties or privileges or in any manner deprived of his life, liberty, or property "but by the judgment of his peers, or by the Law of the Land." That provision has been held to be the State counterpart to both the due process and the equal protection clauses of the Fourteenth Amendment. *See Kane v. Board of Appeals*, 390 Md. 145, 169, n. 16, 887 A.2d 1060,

---

**3.** But for the condition attached to the second exception, Alavez may have qualified under that exception. MVA did not, and could not, determine, however, that Alavez would be able to take the action required by New Jersey for reinstatement of his driving privilege in that State. Indeed, it determined precisely the opposite, and that determination is not challenged in this appeal.

**4.** Even if we were to construe TR § 16–103.1 as applying only to out-of-State suspensions for conduct that would produce a similar result with respect to a Maryland license, it would avail Alavez naught He was not suspended in New Jersey because he was an undocumented or illegal alien, but, as the ALJ specifically found, based on the NJMVC records, for obtaining the New Jersey license by the use of forged documents. The same result would pertain had he obtained a Maryland driver's license by the use of forged documents. *See* TR § 16–201(a)(3) (MVA may cancel Maryland driver's license if it determines licensee committed fraud in obtaining license); § 16–301(b)(4) (person may not in any application for a driver's license use a false, fictitious, or fraudulently altered document); §§ 16–402(a)(31) and 16–404(a)(3)(ii) (assessment of 12 points for conviction violation of § 16–301 and revocation of license of person who accumulates 12 points).

1074, n. 16 (2005) (due process); *Bowie Inn, Inc. v. Bowie,* 274 Md. 230, 235, n. 1, 335 A.2d 679, 683, n. 1 (1975) (due process); *Matter of Easton,* 214 Md. 176, 187, 133 A.2d 441, 447 (1957) (due process); *Murphy v. Edmonds,* 325 Md. 342, 353–54, 601 A.2d 102, 107–08 (1992) (equal protection).

At no time during the administrative hearing before the ALJ did Alavez mention either Art. 24 or equal protection. He did mention that "[t]he due process section is that he went to the MVA one time and asked for a license" and that MVA made clear that as long as the New Jersey suspension, which Alavez could not cure, remained extant, he could not get a Maryland license. Fleeting as that reference was, the ALJ addressed the issue. Her response was that any due process issue would arise from the New Jersey law and would need to be dealt with in that State and that, based on *Gwin v. MVA,* there was no due process violation emanating from the Maryland TR § 16–103.1.

The due process and equal protection argument seems to be based on the notion that, because Maryland would not refuse to issue a driver's license simply because the applicant is unable to prove legal residence in the United States, it has no legitimate interest in denying such a license to a qualified applicant simply because New Jersey has a different policy, especially when that policy, if implemented through the revocation, suspension, refusal, or cancellation of a New Jersey license, would permanently bar the applicant from obtaining a Maryland driver's license. There are two responses. First, as we pointed out in footnote 4, above, Alavez's license was not suspended in New Jersey because he is an illegal resident, but because he used forged documents to obtain that license, and Maryland would do the same. He is being treated the same as any other person whose license is suspended for that reason. Maryland does have a legitimate interest in assuring that persons who have resorted, or attempted to resort, to fraud or forged documents in order to obtain a driver's license elsewhere and who, as a result, have had that license revoked, suspended, refused, or cancelled in the other State, not be rewarded for that conduct by receiving a Maryland driver's

license. The fact that the out-of-State revocation or suspension maybe permanent does not suffice to make the Maryland reciprocity statute unconstitutional. That was also the case in *Gwin*, which, despite Alavez's request, we decline to overrule. It was right when filed, and it remains right today.[5]

JUDGMENT OF CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY PETITIONER.

Dissenting Opinion by ELDRIDGE, J., which GREENE, J. joins.

ELDRIDGE, J., dissenting.

Under the State's and the majority's interpretation of Maryland Code (1977, 2006 Repl.Vol.), § 16–103.1 of the Transportation Article, Alavez, now a resident of Maryland, will always be ineligible to obtain a driver's license in Maryland because of New Jersey's policy of refusing a driver's license to a person whose "continued presence in the United States is [un]authorized under Federal Law." New Jersey's policy in this respect is directly contrary to Maryland's public policy,

---

**5.** The Dissent suggests that, because TR § 7–103.1 is "broad and sweeping," and precludes persons whose licenses are suspended in other States from obtaining a Maryland driver's license even if they would be able to obtain such a license but for that suspension, the statute is arbitrary and therefore may, or possible could, be unconstitutional in some way. The Dissent offers as proof the extreme hypothetical situation of the Canadian province of Quebec suspending a person's driver's license because the person cannot speak French and is somehow physically, mentally, or emotionally incapable of learning French. That, of course, is not this case, and despite the hesitant response of MVA counsel to Judge Eldridge's no doubt entirely unanticipated question, it is not at all clear that Maryland would deny a license in such a bizarre situation. The Maryland law is broad and sweeping, and was intended to be so. It appears to be consistent with the laws enacted in most, if not all, of the other States, and there is nothing arbitrary, capricious, or unconstitutional about it. It is a legitimate safety measure and appears to be applied fairly and uniformly, precisely as intended by the General Assembly. The Dissent urges that "[t]he General Assembly's policy decision concerning the issue should be respected by the Judiciary and the MVA." That is exactly what MVA and this Court are doing.

which does not require that non-citizens of the United States demonstrate federally authorized presence in this country as a condition for obtaining a Maryland driver's license.

A person in a similar position as Alavez, but who had resided in Maryland ever since his or her arrival in the United States, or who had moved to Maryland from another state without a lawful presence requirement for a driver's license, would now be eligible for a Maryland driver's license. An interpretation of § 16–103.1, which makes a Marylander's eligibility for a driver's license dependent upon which state the individual came from, is, in my opinion, arbitrary and unnecessary.[1] It is an interpretation presenting serious constitutional problems under the equal protection component of Article 24 of the Maryland Declaration of Rights.

I would reverse the decisions below and direct that the case be remanded to the MVA for a new determination, treating Alavez in the same manner as a person whose Maryland driver's license was suspended by the MVA because the person obtained the Maryland license by using a false document.[2]

The majority opinion takes the position that "[t]here is nothing uncertain or ambiguous about" § 16–103.1 of the

---

**1.** According to a November 2007 Report of the National Immigration Law Center, at least eight states do not have lawful presence requirements as a condition for drivers licenses. Several other states do not have such a statutory requirement but, apparently, may have such a requirement administratively.

**2.** The majority, in footnote 4, states that, even if Alavez were treated the same as a person whose Maryland driver's license was suspended for using a false document, "it would avail Alavez naught." The majority's statement is erroneous. If Alavez had a Maryland driver's license suspended because he used a false document to obtain the license, he would not face a lifetime suspension. Neither side disputed this fact at oral argument. Instead, it was pointed out that he could apply for reinstatement of his Maryland driver's license and it could be reinstated after 12 months. See § 16–208(a)(1) of the Transportation Article which prohibits the MVA from suspending "a license of privilege to drive for a period of more than 1 year." Even if a license is revoked because of points, it may be reinstated after a period of time. See § 16–208(b)(2)(ii) of the Transportation Article.

Transportation Article, which provides in pertinent part as follows:

"The Administration may not issue a driver's license to an individual:

(1) During any period for which the individual's license to drive is revoked, suspended, refused or canceled in this or any other state...."

Nevertheless, this Court has held that "very broad and sweeping" statutes, or "[g]eneral statutes ... which, if given their broadest and most encompassing meaning, give rise to constitutional questions, have regularly been the subject of narrowing constructions so as to avoid the constitutional issues." *Schochet v. State,* 320 Md. 714, 729, 580 A.2d 176, 183 (1990). *See also, e.g., Board of Trustees of Employees' Retirement System of City of Baltimore v. Mayor & City Council of Baltimore City,* 317 Md. 72, 97–98, 562 A.2d 720, 732–733 (1989) (This Court construed broad delegation of legislative power language to be advisory only, to "avoid[ ] casting substantial doubt upon" the validity of the statutory language); *Yangming Marine Transport Corp. v. Revon Products U.S.A., Inc.,* 311 Md. 496, 509–510, 536 A.2d 633, 640 (1988) (A construction of the statute in accordance with its literal meaning would present a substantial issue under the federal Constitution's Commerce Clause, and, therefore, this Court construed the statute narrowly); *In Re James D.,* 295 Md. 314, 327, 455 A.2d 966, 972 (1983) (This Court decided " 'to construe the statute more narrowly than its literal wording,' " in order to avoid a substantial constitutional question); *Mangum v. Md. St. Bd. of Censors,* 273 Md. 176, 187–192, 328 A.2d 283, 289–292 (1974) (Construing the definition of "obscenity" narrowly in light of First Amendment requirements).

Section 16–103.1(1) of the Transportation Article, with the majority's broad construction of the statute, presents serious constitutional issues. Like the statutes involved in the above-cited cases, it should be construed more narrowly to avoid those constitutional issues.

The statute is sweeping, rendering a Maryland resident ineligible for a Maryland driver's license if previously he or she had a driver's license revoked, suspended, or canceled in any other state, or was refused a driver's license in any other state. Moreover, "any other state," for purposes of this statute, even includes the Provinces of Canada. *See* §§ 11–101 and 11–161 of the Transportation Article. In addition, if the statute is given its broadest possible meaning, as the majority does, the grounds for the action in "any other state" are irrelevant. Even if those grounds would not disqualify a native Marylander from obtaining a driver's license, and even if the grounds are discriminatory, arbitrary, or contrary to strong Maryland public policy, the action in the "other state" would render the applicant ineligible for a Maryland driver's license. Literally, if the "other state" had suspended the applicant's driver's license because of his or her race, color, national origin, gender, religion, or any other arbitrary reason, the applicant, after moving to Maryland, would be ineligible for a Maryland driver's license.

The broad, sweeping interpretation of § 16–103.1(1), advocated by the MVA and adopted by the majority, is illustrated by the following colloquy during the oral argument before this Court:

"Judge Eldridge: Let me ask you a hypothetical, [perhaps an] unrealistic hypothetical, but it will illustrate a point. Suppose the Province of Quebec passes a statute that says anyone who cannot speak French doesn't get a license and everybody who has a Quebec driver's license who doesn't speak French gets suspended for life.

"Judge Wilner: Until you learn to speak French.

"Judge Eldridge: So let's say somebody who's unable to learn French comes to Maryland, resettles in Maryland, has had his [Quebec] license suspended because he's not French-speaking and applies to MVA for a Maryland's driver's license. Are you going to give it to him or not?

"Counsel for MVA: Well if the person truthfully fills out the application, and reports . . . .

"Judge Eldridge: Truthfully. [He] says I'm suspended in Quebec, attaches ... the Quebec statute.

"Counsel for MVA: I believe that Canadian ...

"Judge Eldridge: No Constitutional argument, ... the U.S. [Constitution], you know, doesn't apply to Quebec.

"Counsel for MVA; I believe that ...

"Judge Eldridge: But Quebec, as I understand, is a state under the statute.

"Counsel for MVA: I believe a Canadian suspension would be reported under the national driver registry and the MVA would reject that application, as it's required to do by statute.

"Judge Eldridge: Under my hypothetical he could never drive in Maryland unless he [goes] back to Quebec, learns to speak French, and gets a Quebec driver's license, correct?

"Counsel for MVA: Well, I'm not ...

"Judge Eldridge: That's a yes or no question.

"Counsel for MVA: Whether he would never be able to ... he may have a legal remedy, 1 don't know that it's in Maryland. It might be a federal remedy. But I would agree that in Maryland he doesn't have a remedy....

"Judge Eldridge: By federal, [do] you mean federal in Canada, or federal here?

"Counsel for MVA: Yeah, federal in ... well maybe both. Perhaps. But I don't believe he has a Maryland remedy under the licensing laws. That suspension is in effect and the MVA is under [a] mandatory duty to reject it.

"Judge Raker: So your answer is yes to Judge Eldridge's question?

"Counsel for MVA: Yes.

"Judge Eldridge: You won't give him a license?

"Counsel for MVA: Won't be ... he'll plainly be rejected.

A person whose presence in the United States is federally unauthorized, who has been refused a driver's license in New Jersey because of his or her immigration status, and who later becomes a resident of Maryland, will be ineligible for a

Maryland driver's license under the MVA's and the majority's interpretation of § 16–103.1(1) of the Transportation Article. On the other hand, a person whose presence in the United States is federally unauthorized, who has been given a driver's license in Maine, New Mexico, Oregon, Washington or any other state having the same driver's license policy as Maryland's, and who later becomes a resident of Maryland, will be eligible for a Maryland driver's license.

Making a Maryland resident's eligibility for a Maryland driver's license depend upon which state or province was the person's previous residence certainly appears to lack any rational basis. Moreover, the grounds of refusal in the other state or province could be utterly arbitrary or discriminatory. The MVA's and the majority's interpretation of § 16–103.1(1) obviously presents substantial issues under the equal protection component of Article 24 of the Maryland Declaration of Rights. *See, e.g., Maryland Green Party v. Board of Elections,* 377 Md. 127, 156–164, 832 A.2d 214, 231–236 (2003); *Frankel v. Board of Regents,* 361 Md. 298, 312–318, 761 A.2d 324, 331–335 (2000); *Verzi v. Baltimore County,* 333 Md. 411, 416–427, 635 A.2d 967, 969–975 (1994); *Kirsch v. Prince George's County,* 331 Md. 89, 104–108, 626 A.2d 372, 379–381 (1993); *Attorney General v. Waldron,* 289 Md. 683, 704–728, 426 A.2d 929, 940–954 (1981). A narrower construction of § 16–103.1(1) would avoid the significant equal protection issues presented by the majority's broad construction of the statute.

In the absence of congressional legislation governing the issue, the eligibility of Maryland residents, whose presence in Maryland is federally unauthorized, to obtain Maryland driver's licenses is a policy matter for the General Assembly of Maryland. This is true regardless of one's individual political position about the issue. The General Assembly's policy decision concerning the issue should be respected by the Judiciary and the MVA. Clearly, Maryland's public policy in this regard should not be dictated by "any other state" including foreign provinces, particularly when it results in

similarly situated Maryland residents being treated differently without any rational basis.

Judge Greene authorized me to state that he joins the views expressed in this dissent.