16 A.3d 196

Thomas Peter HEADEN

v.

MOTOR VEHICLE ADMINISTRATION.

No. 42, Sept. Term, 2009.

Court of Appeals of Maryland.

March 28, 2011.

560

Leonard R. Stamm (Johanna C. Leshner of Goldstein & Stamm, P.A., Greenbelt, MD), on brief, for petitioner/cross-respondent.

Leight D. Collins, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Glen Burnie, MD), on brief, for respondent/cross-petitioner.

Argued before BELL, C.J., BATTAGLIA, GREENE, MURPHY, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, Specially assigned), JJ.

BARBERA, J.

Resolution of this case requires us to construe several provisions of the Transportation Article of the Maryland Code (1977, 2009 Repl.Vol.) (hereafter "TR"). The first of those is TR § 16–117.1, which provides in relevant part that, upon satisfaction of certain requirements, a licensee may "appl[y] for the expungement of the licensee's public driving record." We must decide how that section is to be applied, given a separate provision of that subtitle, TR § 12–111(b)(2), which authorizes the MVA to maintain "confidential" records. We also must interpret TR § 16–103.1(1), which provides in relevant part that the MVA "may not" issue a driver's license to an individual whose privilege to drive is "revoked, suspended, refused, or canceled in this or any other state[.]" And, we must decide whether a licensee who is disqualified for licensure under TR § 16–103.1(1) is entitled to an administrative hearing.

For the reasons that follow, we hold that TR § 16–117.1, the expungement provision, when read in harmony with TR § 12–111(b)(2), authorizes the MVA, after five years, to remove from a licensee's public driving record any record of drunken driving convictions and probation before judgment dispositions, rendering the records of those convictions and dispositions no longer part of the licensee's public driving record and therefore not subject to expungement. We further hold that the MVA properly denies an individual's application for a driver's license without an administrative hearing when the applicant's driver's license is suspended, revoked, refused, or canceled in another state. That is so even if the MVA,

through mistake or oversight, has previously granted the individual a Maryland driver's license.

Petitioner Thomas Headen's record of drunken driving offenses spans three decades and involves drunken driving dispositions in two states, Maryland and Florida. In Maryland, Petitioner was convicted in 1976, 1978, and 1982 of driving while impaired by or under the influence of alcohol. In 1993, he pleaded guilty to driving while intoxicated and received probation before judgment.

In October 1994, Petitioner moved to Florida and was issued a Florida driver's license. As required by that state's law, Petitioner surrendered his Maryland license. *See* FLA. STAT. ANN. § 322.03(1)(b) (LexisNexis 2011). Nine months later, Petitioner was arrested on suspicion of driving while under the influence of alcohol. Pursuant to Florida's administrative process (analogous to Maryland's administrative process, set forth in TR § 16–205. 1), Petitioner's license was suspended administratively for one year upon his refusal to submit to an alcohol concentration test. In September 1995, a Florida court convicted him of driving under the influence of alcohol. Pursuant to Florida law, the court ordered the permanent revocation of Petitioner's Florida license.[1]

Petitioner later returned to Maryland and, in 2001, applied for a Maryland driver's license. On November 1, 2001, the MVA summarily denied the application, in light of the permanent revocation of Petitioner's Florida driver's license. The MVA's action was based on Article V, subsection (2) of the Driver License Compact ("the Compact"), and TR § 16–103.1(1). The Compact, which is codified at TR § 16–703, provides in relevant part: "The licensing authority in the state where application is made shall not issue a license to drive to

---

1. Florida law provides that "the court shall permanently revoke the driver's license or driving privilege of a person who has been convicted four times for violation of [driving under the influence of alcohol]." FLA. STAT. ANN. § 322.28(2)(e) (LexisNexis 2011). The Florida court aggregated Petitioner's 1976, 1978, and 1982 Maryland convictions and his 1995 Florida conviction to derive the four convictions that resulted in the permanent revocation of his Florida license.

the applicant if: ... (2) The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, except that after the expiration of 1 year from the date the license was revoked, such person may make application for a new license if permitted by law." [2]  TR § 16–103.1(1) prohibits the MVA from issuing a license "[d]uring any period for which the individual's license to drive is revoked ... in this or any other state." [3]

Petitioner requested and was granted an administrative hearing to challenge the MVA's summary denial of his license application.  The Administrative Law Judge (ALJ) disagreed

---

**2.**  TR § 16–703 provides, in relevant part:

Article V
Applications for New Licenses:

Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held, or is the holder of a license to drive issued by any other party state.  The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:

(1) The applicant has held such a license, but the same has been suspended by reason, in whole or in part, of a violation and if such suspension period has not terminated.

(2) The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, except that after the expiration of 1 year from the date the license was revoked, such person may make application for a new license if permitted by law.  The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways.

(3) The applicant is the holder of a license to drive issued by another party state and currently in force unless the applicant surrenders such license.

**3.**  TR § 16–103.1(1) provides in full:

The Administration may not issue a driver's license to an individual:

"(1) During any period for which the individual's license to drive is revoked, suspended, refused, or cancelled in this or any other state, unless the individual is eligible for a restricted license under § 16–113(e) of this subtitle[.]"

TR § 16–113 addresses "restricted licenses."  Subsection (e) of TR § 16–113 authorizes the MVA, in certain circumstances, to issue a "Maryland only" license.

with the MVA's interpretation of the Compact and ordered the MVA to "process [Petitioner's] application for a driver's license, and conduct an appropriate investigation to determine whether it is safe to grant [Petitioner] a Maryland driver's license." The MVA did not seek judicial review of the ALJ's decision. On March 8, 2002, the MVA issued Petitioner a "Maryland Only" license. *See* TR § 16–113(e).

Three years later, this Court issued its opinion in *Gwin v. Motor Vehicle Admin.*, 385 Md. 440, 869 A.2d 822 (2005). We held in *Gwin* that the plain language of TR § 16–103.1 prohibits the MVA from issuing a driver's license to an individual whose driving privileges, at the time of application, have been suspended or revoked by any jurisdiction. We explained why:

> [T]here is no conflict between [TR § 16–103.1], which permits the MVA to deny a driver's license to an individual whose driver's license has been revoked in Maryland or any other state, and the Driver License Compact. . . . The clear legislative intent of these two statutes indicates that Maryland law recognizes extraterritorial license revocations and the MVA is not permitted to issue a license to an individual whose license has been permanently revoked in another jurisdiction, even after a period of one year of the revocation.

*Id.* at 445, 869 A.2d at 824 (citation omitted).

On November 15, 2006, the day that Petitioner's "Maryland Only" driver's license was to expire, Petitioner applied for renewal of it. The MVA summarily denied the application. Petitioner spoke by telephone to MVA officials, seeking an explanation for the summary denial. He later memorialized that conversation in a letter to the MVA dated January 31, 2007.

The MVA responded to Petitioner's correspondence by letter dated February 13, 2007. The MVA advised Petitioner that the permanent revocation of his Florida driver's license automatically disqualified him from renewing his Maryland license, pursuant to TR § 16–103.1(1). The MVA further advised Petitioner that, because he was automatically disquali-

fied, he was not entitled to a hearing to contest the MVA's denial of his application for license renewal.

Petitioner, evidently in an attempt to remove from his driving record the Maryland drunken driving convictions that precipitated the permanent revocation of his license in Florida, applied for expungement of his Maryland driving record, pursuant to TR § 16–117.1. By letter dated June 20, 2007, the MVA notified Petitioner that it had expunged certain of Petitioner's driving records by removing several motor vehicle violations and various other notations. The MVA, however, did not expunge any of Petitioner's 1976, 1978, and 1982 Maryland drunken driving convictions or his 1993 probation before judgment.

By letter dated August 20, 2007, Petitioner, through counsel, sought a hearing on the MVA's refusal to renew Petitioner's license and "failure to expunge [Petitioner's] driving record pursuant to his request under [TR] § 16–117.1." The MVA responded by letter dated May 1, 2008, explaining that, under *Gwin*, 385 Md. 440, 869 A.2d 822, and TR § 16–103.1, Petitioner was disqualified automatically from obtaining a Maryland driver's license and therefore not entitled to a hearing. The MVA also explained in the May 1, 2008 letter that the drunken driving convictions and probation before judgment dispositions remained only on Petitioner's "confidential" driving record and were not part of his "public driving record." The MVA further explained that, unlike a "public driving record," a "confidential" record of a conviction or probation before judgment disposition for driving under the influence is never subject to expungement.

Pursuant to TR § 12–111(b)(2), about which we shall say more later in this opinion, the MVA "may classify as confidential and not open to public inspection any record or record entry: (i) That is over 5 years old; or (ii) That relates to any happening that occurred over 5 years earlier." Government agencies, though, have access to those records that the MVA has classified as confidential, pursuant to TR § 12–111(b)(3). As a consequence, even though Petitioner's public driving

record was expunged, he presumably remains subject to permanent revocation in Florida, because the Florida licensing authority continues to have access to Petitioner's confidential driving record and, hence, his Maryland drunken driving convictions.

The MVA advised Petitioner in the May 1, 2008 letter that his only avenue of redress would be through appropriate action in a court of law. Acting pursuant to that suggestion, Petitioner sought judicial review of the MVA's decision.

### Judicial Review in Circuit Court

Petitioner initiated judicial review on May 22, 2008, by filing in the Circuit Court for Charles County a petition for judicial review of the MVA's actions, pursuant to Maryland Code (1984, 2009 Repl.Vol.), § 10–222(h) of the State Government Article ("SG"). On June 20, 2008, he "amended" the petition to a complaint for issuance of a writ of administrative mandamus, pursuant to the provisions of Maryland Rules 7–401 through 7–403.[4]

At the hearing on the complaint for issuance of the writ, Petitioner challenged both the MVA's summary denial of his application for renewal of the 2002 license and the MVA's refusal to expunge the "confidential" record of Petitioner's drunken driving convictions. With regard to his challenge to

---

4. An action for a writ of administrative mandamus is available for "review of a quasi-judicial order or action of an administrative agency where review is not expressly authorized by law." Md. Rule 7–401. The action "is commenced by the filing of a complaint, the form, contents, and timing of which shall comply with Rules 7–202 and 7–203." Md. Rule 7–402. The circuit court may "revers[e] or modify[ ] the decision if any substantial right of the plaintiff may have been prejudiced because a finding, conclusion, or decision of the agency":

    (A) is unconstitutional,

    (B) exceeds the statutory authority or jurisdiction of the agency,

    (C) results from an unlawful procedure,

    (D) is affected by any error of law,

    (E) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted,

    (F) is arbitrary or capricious, or

    (G) is an abuse of its discretion.

Md. Rule 7–403.

the summary denial of his license-renewal request, Petitioner conceded that, if he was subject to the holding of our 2005 *Gwin* decision, he would not be entitled to license renewal. Petitioner argued, though, that, because he was granted a Maryland license in 2001 despite, at that time, the permanent revocation of his Florida driver's license, he was entitled to an administrative hearing to determine whether, in fact, he was subject to *Gwin*. The MVA countered that the plain language of the automatic disqualification section, TR § 16–103.1(1), states (in the words of counsel for the MVA): "if you're suspended or revoked in another State[,] [then in] Maryland you can't get a license." Moreover, argued the MVA, *Gwin* unquestionably applies to Petitioner and he therefore is not entitled to an administrative hearing, which in any event would be a "purely ministerial act."

With regard to his challenge to the MVA's refusal to expunge his prior drunken driving convictions and probation before judgment disposition, Petitioner made a statutory construction argument. He contended that the MVA is permitted to maintain only one class of driving records, which, upon satisfaction of the statutory criteria listed in TR § 16–117.1, must be expunged in their entirety. The MVA disagreed. The MVA argued that, when TR § 16–117.1 (which requires expungement of the licensee's "public driving record" under certain circumstances) is read together with TR § 12–111(b)(2) (which authorizes the MVA to classify certain records as "confidential"), it is evident that the MVA is authorized, after 5 years, to maintain as confidential some or all of a licensee's driving records, and only that portion, if any, of the licensee's record that remains "public" is subject to expungement.

After hearing the parties' arguments, the Circuit Court agreed with Petitioner that he was entitled to an administrative hearing to determine whether his license revocation in Florida precluded him from licensure in Maryland. The court stated:

> What I'm going to do is ... I'm going to grant the remand [for an administrative hearing] ... and, again, it may be of

no import, but I am going to order remand to allow him to have that hearing that was denied, and the reason given was you're not going to win it anyway. I think that's still procedurally the right thing to do.

The Circuit Court rejected Petitioner's contention regarding expungement. The court noted that the MVA "did expunge" Petitioner's driving record "to some extent.... They did expunge ... the public record aspect." The court added: "I think it's a matter of the definition of what's the expungement. And, so I'm going to deny that portion of" Petitioner's complaint.

Petitioner petitioned this Court for further review, as did the MVA by way of cross-petition. We granted both the petition and cross-petition to consider the following questions:

(1) Whether the Circuit Court erred in affirming the MVA's refusal to expunge selected traffic convictions based on its interpretation of TR § 16–117.1?

(2) Whether the Circuit Court erred in ordering the MVA to provide Petitioner a hearing to contest the MVA's refusal to issue him a driver's license, after the agency refused his application pursuant to § 16–103.1?

## II.

Resolution of the two questions presented involves statutory interpretation, "the cardinal rule of [which] is to ascertain and effectuate the intent of the Legislature." *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC,* 412 Md. 308, 314, 987 A.2d 48, 52 (2010) (quotation marks and citation omitted). Under the rules of construction, "we neither add nor delete language so as to reflect an intent not evidenced in the plain language of the statute; nor [do we] construe the statute with forced or subtle interpretations that limit or extend its application." *Lonaconing Trap Club, Inc. v. Md. Dept. of the Env't,* 410 Md. 326, 339, 978 A.2d 702, 709 (2009) (internal quotation and citation marks omitted). We must " 'read a statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superflu-

ous, meaningless or nugatory.' " *Della Ratta v. Dyas*, 414 Md. 556, 570, 996 A.2d 382, 390 (2010) (quoting *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 275, 983 A.2d 138, 153 (2009)). "The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 577, 870 A.2d 186, 193 (2005).

■ When applying these rules of statutory construction, we give deference to an administrative agency's interpretation of the statutes it administers. *See Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 68, 729 A.2d 376, 381 (1999). We have said in that regard:

[A] court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.

*Id.* at 68–69, 729 A.2d at 381 (emphasis and citations and quotation marks omitted). *See also Motor Vehicle Admin. v. Weller*, 390 Md. 115, 142, 887 A.2d 1042, 1058 (2005) (citing, with approval, *Banks* for the proposition that reviewing courts should give deference to the agency's interpretation of statutory directives).

With these principles in mind, we turn to the questions before us.

### III.

The Circuit Court, in denying Petitioner's challenge to the MVA's denial of his application for license renewal, ruled that, once the MVA classified as "confidential" the records of his 1976, 1978, and 1982 drunk driving convictions and his 1993 probation before judgment disposition, the MVA properly

declined to expunge those records from Petitioner's "public driving record." Petitioner challenges the Circuit Court's reasoning and ruling. His challenge implicates TR §§ 12–111 and 16–117.1, both of which provisions warrant further examination before we tackle the parties' specific contentions.

## A.

■ Guidelines for maintaining and disclosing MVA records are provided in TR § 12–111, entitled "Records of Administration—In General."[5] Referring to the MVA as the "Administration," subsection (a) states: "The Administration shall keep a record of each application or other document filed with it and each certificate or other official document that it issues."

Subsection (b) of TR § 12–111 is central to the issues before us. Paragraph (b)(1) provides: "Subject to § 10–616(p) of the State Government Article [i.e., the "Required denials—Specific records" section of Maryland's Public Information Act], and except as otherwise provided by law, all records of the Administration are public records and open to public inspection during office hours."[6] Paragraph (b)(2) provides that the

---

5. Among the records the MVA is required to maintain are driver's license applications, each driver's license issued, accident reports, court dispositions, convictions, probation before judgment dispositions for violations of the Motor Vehicle laws, and records of administrative sanctions imposed pursuant to TR § 16–205.1 (Maryland's so-called Implied Consent Statute). *See* TR § 16–117(a), (b). Under TR § 16–117(b)(2)(i), the MVA must "segregate" a driver's record of probation before judgment dispositions and/or first TR § 16–205.1 violation for driving with a blood alcohol concentration over 0.08. This segregated record is available only to the MVA, the courts, authorized officials, the driver, and the driver's attorney. TR § 16–117(b)(2)(i).

6. Section 616(p) of the State Government Article ("SG") is entitled *"Motor Vehicle Administration records containing personal information."* The subsection provides, inter alia: "[A] custodian may not knowingly disclose a public record of the Motor Vehicle Administration containing personal information" to authorities other than those authorized by law, absent written consent of the individual. Personal information, as defined by SG § 10–611(f)(1), is "information that identifies an individual including an individual's address, driver's license number or any other identification number, medical or disability information, ... Social Security number, or telephone number." Per-

MVA "may classify as confidential and not open to public inspection any record or record entry" "[t]hat is over 5 years old" or "[t]hat relates to any happening that occurred over 5 years earlier." Paragraph (b)(3) provides, though, that the confidential record "shall be open to inspection by authorized representatives of any federal, State, or local governmental agency." Subsection (b)(4), which was added to TR § 12–111 a number of years after subsection (b)(2), in turn provides: "Subject to paragraph (3) of this subsection, the Administrator may not open to public inspection any record or record entry that is: (i) All or part of a licensed driver's public driving record; and (ii) Over 3 years old."

TR § 16–117.1, entitled "Expungement of certain driving records," of course, is also a focus of our analysis. TR § 16–117.1(a) simply notes that, for purposes of this section, " 'criminal offense' does not include any violation of Maryland Vehicle Law." Subsection (b) is of particular importance to the present case. That subsection provides in pertinent part that, "if a licensee applies for the expungement of the licensee's *public driving record,*" (emphasis added), then the MVA "shall expunge the record if, at the time of application[,]" the following conditions are met:

(1) The licensee does not have charges pending for allegedly committing a moving violation or a criminal offense involving a motor vehicle; and

(2)(i) The licensee has not been convicted of a moving violation or a criminal offense involving a motor vehicle for the preceding 3 years, and the licensee's license never has been suspended or revoked;

(ii) The licensee has not been convicted of a moving violation or a criminal offense involving a motor vehicle for the preceding 5 years, and the licensee's record shows not more than one suspension and no revocations; or

(iii) Within the preceding 10 years:

sonal information "does not include an individual's driver's status, driving offenses, 5–digit zip code, or information on vehicular accidents." SG § 10–611(f)(2).

1. The licensee has not been convicted of nor been granted probation before judgment for a violation of § 20–102 [leaving the scene of an accident involving bodily injury or death] or § 21–902 [driving while under the influence of or impaired by alcohol and or controlled substances] of this article;

2. The licensee's driving record shows no convictions from another jurisdiction of a moving violation identical or substantially similar to § 20–102 or § 21–902 of this article; and

3. The licensee has not been convicted of any other moving violation or criminal offense involving a motor vehicle, regardless of the number of suspensions or revocations.

Also relevant to our discussion is subsection (d), which requires the MVA to expunge automatically the driving record of an individual "from [the MVA's] driver record data base" if that individual is one:

(1) Who has not been convicted of a moving violation or criminal offense involving a motor vehicle for the preceding 3 years;

(2) Who has not been convicted of, or been granted probation before judgment for:

(i) A violation of § 20–102 of this article;

(ii) A violation of § 21–902 of this article; or

(iii) A moving violation identical or substantially similar to § 20–102 or § 21–902 of this article; and

(3) Whose license or privilege to drive never has been suspended or revoked.

### B.

The key to our analysis lies in a construction of TR § 16–117.1 and TR § 12–111 such that each is in harmony with the other and no word or provision is rendered nugatory or surplusage.

We begin that endeavor with examination of the language and legislative history of the expungement provision, TR

§ 16–117.1. That section contains two provisions of relevance here. First is TR § 16–117.1(b), which, as we have explained, requires the MVA to expunge the licensee's "public driving record" upon the application of the licensee and satisfaction of certain statutory criteria. Applicable to Petitioner is paragraph (b)(2)(iii), which requires a driver to wait ten years before expungement of his or her public driving record, during which time the driver cannot have been convicted of any moving violations or have any traffic-related charges pending at the time of application. Because Petitioner meets those criteria, he contends that he is entitled to expungement of the record of his prior drunken driving convictions and probation before judgment disposition. That contention, however, is premised upon Petitioner's flawed construction of "public" as used in the phrase "public driving record" in subsection (b).

The Transportation Article does not contain a definition of "public driving record." Petitioner urges this Court to construe "public" as defined in the Maryland Public Information Act, found at SG §§ 10–611 through 10–630. According to SG § 10–611(g), a "public record" includes any document "made by a unit or instrumentality of the State government or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business[.]" Based on that definition, Petitioner maintains (1) that any record made or received by the MVA is a "public driving record," which would necessarily include records classified by the MVA as "confidential," and (2) the use of "public" in the phrase "public driving record" merely reflects that. For several reasons, we disagree.

First, Petitioner's construction defies common sense. Any record created or received by the MVA is, by the very definition Petitioner relies upon, "public" in the sense that it "is made by a unit or instrumentality of the State government or of a political subdivision." *See* SG § 10–611(g). Were we to accept Petitioner's argument, we would render repetitive and nugatory the General Assembly's use of the word "public" in "public driving record." If Petitioner's interpretation carried the day, then any record referred to throughout the Code

that is not preceded by the word "public" would indicate an intent by the General Assembly that such record *not* be open to public inspection. Such a construction would yield absurd results. "Public driving record" must, then, mean something more specific than simply any record made or received by the MVA, or pertinent here, any "driving record."

Second, the legislative history of TR § 16–117.1(b)(2) makes clear that the General Assembly intended the term "public" to have a meaning different from that suggested by Petitioner. The expungement process and the term "public driving record," as employed in TR § 16–117.1(b)(2), appeared for the first time in a 1972 amendment to what was then Art. 66 ½ § 6–117(e) (1957, 1970 Repl.Vol.), entitled "Records to be kept by Department." *See* SB 658, 1972 Md. Laws Ch. 106. Prior to the amendment, Art. 66 ½ § 6–117(e) provided as follows:

(e) If a *driver's record* shows only one suspension and he has had no subsequent motor vehicle convictions for a period of 5 years, or if his record shows only one revocation and it resulted from a violation of the provisions of former section 104(b) of this article, . . . and he has no subsequent motor vehicle convictions for 5 years, the *driving record* of the driver may be destroyed.

(Emphasis added.)

We pause here to emphasize that, pursuant to the above-quoted provision, the decision of whether to destroy a record, subject to the one limitation described below, was within the discretion of the MVA. *See* Art. 66 ½ 6–117(e) (1957, 1970 Repl.Vol.) (providing that the "driving record of the driver may be destroyed"). To like effect was an earlier provision, also related to the destruction of records, found at Art. 66 ½ § 16 (1957, 1967 Repl.Vol.), and entitled "Destruction of records." That provision provided in relevant part:

The Commissioner may microfilm any records of the Department at any time he deems proper or destroy any records of the Department, which have been maintained on file for three (3) years, which he may deem obsolete and of no further service in carrying out the powers and duties of

the Department except records of criminal and motor vehicle violations which show refusal, or revocation of license and/or registration as a result of a conviction under the provisions of § 104(a) of this article, showing mandatory refusal or revocation. If an operator's or chauffeur's record shows only one suspension and there have been no subsequent motor vehicle convictions for a period of ten years, the driving record of such driver may be destroyed.

Particularly relevant for our purposes is that, common to both provisions, the MVA's discretion was limited in that the agency was not authorized to destroy records of drunken driving convictions. *See* Art. 66 ½ § 117(e) (1957, 1970 Repl.Vol.) (stating that the MVA may not destroy a record of a licensee whose driver's license was revoked, unless that revocation was related to § 104(b), which at the time, referred to driving-related convictions of a minor); Art. 66 ½ § 16 (1957, 1967 Repl.Vol.) (specifying that the MVA may not destroy the record of a licensee who was convicted of an offense listed under § 104(a), which at the time, set forth several criminal offenses, including "[d]riving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug"). Therefore, pursuant to those provisions, the MVA was prevented from destroying records of drunken driving convictions. That limitation is consistent, as will be seen, with our interpretation of TR §§ 16–117.1(b) and 12–111, through the latter of which the MVA has exercised its authority to maintain, as confidential, drunken driving convictions that are at least five years old.

We now return to the 1972 amendment that created what has become present-day TR § 16–117.1. The section was codified at Art. 66 ½ § 6–117(e) (Cum.Supp.1972) and entitled *"Expunging Certain Drivers Driving Records."* It provided:

The Administration may expunge the *public driving record* of any person, who at the time of application possesses a valid driver's license, when:

(1) He has had no moving motor vehicle convictions or convictions of a criminal offense involving a motor vehicle

for a period of three years and has never been suspended or revoked;

(2) He has had no motor vehicle convictions or convictions of a criminal offense involving a motor vehicle for a period of five years and his record shows not more than one suspension and no revocations[;]

(3) He has had no motor vehicle convictions or convictions of a criminal offense involving a motor vehicle for a period of ten years regardless of the number of suspensions or revocation.

(Emphasis added.) Art. 66 ½ § 6–117(e), pursuant to the 1977 re-codification, became TR § 16–117.1 and, through subsequent amendments not at issue here, evolved into present-day TR § 16–117.1.

The expungement provision of Art. 66 ½ § 6–117(e) (the ancestor of today's TR § 16–117.1) was added to the Code two years after the enactment of Art. 66½ § 2–312, what is today TR § 12–111(b)(2). As we explained *supra*, under TR § 12–111(b)(1), driving records are presumed to be "public records and open to public inspection during office hours." The General Assembly saw fit, however, to limit public access. Pursuant to TR § 12–111(b)(2), the MVA *"may* classify as confidential and not open to public inspection any record or record entry" that is more than 5 years old. (Emphasis added.) Paragraph (b)(2) began as SB 10, 1970 Md. Laws Ch. 534, § 1, by which the General Assembly repealed, reenacted, and amended provisions of the then-existing Art. 66 ½.

Relevant here, the General Assembly amended what was then Art. 66 ½ § 14 (1957, 1967 Repl.Vol.), entitled "Records of Department." Former § 14 provided in relevant part:

(a) *Confidential.*—The Commissioner of Motor Vehicles shall keep a record of all statements filed with him and all certificates issued by him, and all records of the Department, other than those declared *by law* to be confidential for the use of the Department shall be open to public inspection during office hours.

(Emphasis added.) That provision, as amended and renumbered, became Art. 66½ § 2–312 (1957, 1970 Repl.Vol.). Art. 66 ½ § 2–312, much like former Art. 66½ § 14, provided that: "All records of the Department, other than those declared by law to be confidential for use of the Department, shall be open to public inspection during office hours[.]" Importantly, Art. 66 ½ § 2–312 went on to add the following:

> [B]ut the Commissioner *in his discretion may declare any record or entry therein which is more than 5 years old, or which relates to any happening which occurred more than 5 years previously, to be confidential and not open to public inspection.* Any existing record or entry therein, no matter what its age, shall be open to inspection by duly authorized representatives of any State, federal, or local government agency.

(Emphasis added.) This modification later became TR § 12–111(b)(2), pursuant to SB 14, 1977 Md. Laws Ch. 14, § 2 (recodification without substantive changes). Importantly, the 1970 amendment provided the MVA, for the first time, the discretionary authority to determine which records to classify and maintain as "confidential." [7]

---

7. The second limitation under TR § 12–111 is set forth in (b)(4), by which the MVA "may not open to public inspection any record or record entry that is" "[a]ll or part of a licensed driver's public driving record" and "[o]ver 3 years old." That provision was added in 1988, eighteen years after the addition of Art. 66 ½ 2–312 (what is today, TR § 12–111(b)(2)).

The order of enactment is significant. As we have mentioned, paragraph (b)(4) of TR § 12–111 directs the MVA not to make "open to public inspection any record entry" that is part of the "public driving record" and over three years old. Contrary to Petitioner's suggestion, the phrase "not open to public inspection" cannot reasonably be read to mean the equivalent to "confidential," as that term is used in paragraph (b)(2). Indeed, the General Assembly chose to use both "confidential" and "not open to public inspection" in paragraph (b)(2). Had the two terms carried the same meaning for the General Assembly, only one would have been used. And, had the General Assembly intended "not open to public inspection," as used in paragraph (b)(4), to mean "confidential," then surely the General Assembly would have chosen the latter term, already employed for purposes of (b)(2).

The absence from Art. 66½ § 6–117(e) (or today, TR § 16–117.1(b)(2)), of any reference to records classified in the MVA's discretion as "confidential" indicates that "public driving record" means something different from "driving record" and does not include a "confidential" record. The change in phraseology reflects that driving records that are classified as "confidential" by the MVA, pursuant to the authority granted the agency under TR § 12–111(b)(2), are not "public driving records" subject to expungement under TR § 16–117.1(b)(2).[8]

Viewing TR §§ 16–117.1 and 12–111 together and so that each section is in harmony with the other, it is plain that, although the General Assembly provided in TR § 16–117.1(b) for the *possibility* of expungement of drunken driving convictions, upon satisfaction of certain conditions, the General Assembly also gave the MVA discretion, under TR § 12–111, to classify as "confidential" any record, five years in age or older, that ought to be exempt from expungement. Put differently, the General Assembly, through TR § 12–111, has delegated to the MVA the determination of which records (in Petitioner's case, drunken driving convictions) are sufficiently serious that they should remain part of the licensee's driving record, albeit confidential, and thus not subject to expungement. The discretion granted the MVA is consistent with that previously granted "the Commissioner," in Art. 66½, in connection with the destruction of records according to certain criteria.

---

8. We note that the Transportation Article does not contain a definition of "expungement." Maryland Code (2001, 2008 Repl.Vol.), § 10–101(d) of the Criminal Procedure ("CP") Article, however, defines "expunge" as "to remove information from public inspection. . . ." And CP § 10–101(e) defines expungement as "removal from public inspection" by, inter alia, "obliteration" or *"removal to a separate secure area to which persons who do not have a legitimate reason for access are denied access."* (Emphasis added.) Were we to apply the latter definition to the case at hand, the MVA would have "expunged"—as the term is used in the CP Article—Petitioner's records by classifying them as "confidential" and thus accessible only to certain government authorities. This further demonstrates that "public" does not merely reflect, as Petitioner contends, that the record was made or received by the MVA.

The conclusion to which we have come is buttressed by language employed in TR § 16–117.1(d), which was added in 1992 by way of HB 44. *See* 1992 Md. Laws Ch. 541, § 1. Subsection (d) requires the MVA, upon satisfaction of the criteria listed there, to expunge automatically a driver's records from the "driving record data base." Noticeably absent from subsection (d) is the term "public," indicating that expungement under that subsection, reserved for the safest of drivers, is broader in scope than that provided by subsection (b). We presume that the General Assembly's use within the same section of the two terms, "public driving record" and "driving record data base," was intentional.

For all these reasons, we hold that TR § 16–117.1(b) authorizes the expungement of "public driving records," i.e., those records that have not yet been classified by the MVA as "confidential" pursuant to TR § 12–111(b)(2). It was by exercise of discretionary authority granted by that paragraph that the MVA lawfully classified Petitioner's drunken driving convictions as "confidential."

In sum, Petitioner was not entitled to expungement of the records of his 1976, 1978, and 1982 drunken driving convictions and 1993 probation before judgment disposition. The Circuit Court correctly reasoned as much when it denied Petitioner's petition for writ of mandamus on that ground.

## IV.

Still to be resolved is whether the Circuit Court erred by ordering the MVA to provide Petitioner with a hearing to determine whether he should be issued a driver's license. Because Petitioner is barred, as a matter of law, from obtaining a license in Maryland under TR § 16–103.1(1), we agree with the MVA that the Circuit Court erred in remanding the case for an administrative hearing.

Under TR § 16–103.1(1), the MVA may not issue a license to an individual "[d]uring any period for which the individual's license to drive is revoked, suspended, refused, or canceled in this or any other state[.]" The MVA argues that, under this

provision, it need not grant Petitioner a hearing to determine his fitness for a license, because his license is permanently revoked in Florida and thus, he is barred as a matter of law from obtaining a Maryland license.

The MVA's argument is directly supported by *Gwin*, 385 Md. 440, 869 A.2d 822, and subsequently, *Alavez v. Motor Vehicle Admin.*, 402 Md. 727, 939 A.2d 139 (2008). We need not discuss at length our holdings in either of those cases. For our purposes, it is sufficient to note that, in *Gwin*, we explained that TR § "16–103.1 authorizes the State of Maryland to recognize non-Maryland issued suspensions, revocations, refusals or cancellations" as automatic grounds for the denial of a driver's license application. *See Gwin*, 385 Md. at 463, 869 A.2d at 835. We held that, because Gwin's license was permanently revoked in Florida, the MVA properly denied Gwin's application for a Maryland license based on the plain language of TR § 16–103.1. *See id.* at 465, 869 A.2d at 835.

Similarly, in *Alavez*, the MVA denied Alavez's driver's license application pursuant to TR § 16–103.1, because, at the time of application, his license to drive was suspended in New Jersey for having submitted forged documents related to his citizenship status. We affirmed that denial, despite the fact that Alavez's citizenship status would not preclude licensure in Maryland, noting "there is nothing uncertain or ambiguous about the pertinent part of TR § 16–103.1." *Alavez*, 402 Md. at 734, 939 A.2d at 144. Alavez was precluded, therefore, from licensure as a matter of law. *Id.* at 735, 939 A.2d at 143.

■ Petitioner contends that, despite the plain language of TR § 16–103.1(1) and our cases enforcing that plain language, he is entitled an administrative hearing to determine whether, under a theory sounding in collateral estoppel, the provision is inapplicable to him. This may be the case, suggests Petitioner, given that the MVA issued him a driver's license in 2002, despite that his Florida revocation was in existence at that time. Petitioner, however, provides no authority in support of his contention. Nor can we ascertain any reason why our

holdings in *Gwin* and *Alavez* do not directly control here. Merely because Petitioner defeated the system in his 2002 hearing does not mean that he has the absolute right to a license in 2006 and beyond. Stated differently, the MVA is not forever bound by one erroneous ruling and may act appropriately under law in response to each new licensure application.

■■■ Accordingly, there is no doubt that, if an administrative hearing was held, Petitioner would be denied a license based on the "[ ]certain [and] [un]ambiguous" language of TR § 16–103.1. The only question, then, is whether TR § 16–103.1 or some other provision grants to Petitioner the right to an administrative hearing at which, as we have explained, his application would be denied.

We start with the licensing provision at issue, TR § 16–103.1. Absent from that provision is any language entitling Petitioner to a hearing. Had the General Assembly intended to provide for administrative hearings to contest licensure denials under TR § 16–103.1, it would have done so specifically, as it has elsewhere in provisions throughout Title 16.[9] The General Assembly's silence in TR § 16–103.1, therefore, stands in stark contrast to the express statutory authorization for administrative hearings or reviews found elsewhere, indicating that the General Assembly did not intend to provide driver's license applicants the ability to contest at administrative hearings licensure denials pursuant to TR § 16–103.1(1).

There is, additionally, a generally applicable set of provisions relevant here, TR § 12, subtitle 2, entitled "Hearings,"

---

9. For example, under TR § 16–110.3(c) (vision requirements), an applicant who is denied a license based on his vision may appeal to a Medical Board for review and "the Board shall offer the applicant an opportunity to appear before the Board to present medical information pertinent to the Board's review" of the applicant's vision. *See also* TR § 16–113(f) (*"Suspension or revocation for violation of restriction.—* After receiving satisfactory evidence of any violation of a restricted or provisional driver's license, the Administration may suspend or revoke the license. However, the licensee may request a hearing as provided for a suspension or revocation under Subtitle 2 of this title.").

which sets forth notice provisions and general procedures to be followed by the MVA in conducting administrative hearings. The Circuit Court ruled that under those provisions Petitioner was entitled to an administrative hearing.

Pursuant to TR § 12–202, an individual is entitled to an administrative hearing when "the Maryland Vehicle Law or a rule or regulation of the Administration provides that a license or privilege may be suspended or revoked *only* after a hearing." (Emphasis added.) As we have explained above, the relevant statute at issue, TR § 16–103.1(1) has no such mandate. In fact, the statute explicitly reads "the Administration *may not* issue a driver's license to an individual during any period for which the individual's license to drive is revoked, suspended, refused, or canceled in this or any other state[.]" (Emphasis added.) Accordingly, TR § 12–202 provides no relief for Petitioner.

TR § 12–203 requires the MVA to give notice to an applicant of his or her right to request a hearing when "the Maryland Vehicle Law or a rule or regulation of the Administration provides that an applicant or licensee may request a hearing on refusal, suspension, or revocation of a license or privilege[.]" That section does not entitle Petitioner to a hearing because there is no statute, rule, or regulatory provision that grants Petitioner that right.

The MVA, therefore, is not required to provide Petitioner a hearing when, as a matter of law, he is disqualified from obtaining a license in Maryland under TR § 16–103.1(1). The Circuit Court erred in ruling to the contrary. Accordingly, we reverse the part of the judgment of the Circuit Court that directs a remand for an administrative hearing. We remand the case to the Circuit Court with the direction that it enter an order affirming the summary denial by the MVA of Petitioner's application for renewal of his "Maryland Only" license.

**JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECI-**

SIONS OF THE MOTOR VEHICLE ADMINISTRATION.
COSTS TO BE PAID BY PETITIONER.

GREENE, MURPHY, and ELDRIDGE, JJ., Dissent.

ELDRIDGE, J., dissenting.

I disagree with this Court's interpretation and application of Maryland Code (1977, 2009 Repl.Vol., 2010 Supp.), § 16–103.1(1) of the Transportation Article and its holding that Mr. Headen was not entitled to an administrative hearing. *See Alavez v. MVA*, 402 Md. 727, 739–745, 939 A.2d 139, 146–149 (2008)(dissenting opinion of Greene and Eldridge, JJ.). Under the interpretation of the statute set forth in that dissenting opinion, there could be issues warranting an administrative hearing.

Judges GREENE and MURPHY join in this dissent.